# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MADONNA BUSTILLOS, FRANCISCO
CONTRERAS, CONCEPCION T.
HERNANDEZ, MARTHA S. JIMENEZ and
AMANDA VOGELSANG-WOLF, on behalf of
themselves and all others similarly situated,

         Plaintiffs,

vs.                                                                        No. CIV 13-0971 JB/GBW

BOARD OF COUNTY COMMISSIONERS OF
HIDALGO COUNTY,

         Defendant.

## <u>MEMORANDUM OPINION</u>[1]

**THIS MATTER** comes before the Court on Defendant Board of County Commissioners

of the County of Hidalgo's Motion and Memorandum for Summary Judgment on All of Plaintiff

Martha S. Jimenez's Claims, filed November 12, 2014 (Doc. 40)("MSJ").  The Court held a

hearing on April 29, 2015.  The primary issues are: (i) whether Plaintiff Martha S. Jimenez

produced sufficient evidence to support a reasonable inference of the uncompensated hours she

worked; (ii) whether Hidalgo County had actual or constructive knowledge that she performed

uncompensated work; (iii) whether Jimenez' pre- and post-shift work is compensable under the

Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA"); (iv) whether Jimenez' pre-

and post-shift work is compensable under the FLSA as de minimis; (v) whether Jimenez' on-call

work is compensable under the FLSA; (vi) whether the Plaintiffs can use § 50-4-2(b) of the New

---

[1]The Court entered an earlier Order granting the Defendants' MSJ on all of the Plaintiffs'
claims.  <u>See</u> Order, filed September 2, 2015 (Doc. 58)("Order").  The Court stated that it would
"at a later date issue a memorandum opinion more fully detailing its rationale for this decision."
Order at 1 n.1.  This Memorandum Opinion is the promised opinion.

Mexico Statutes to sue a public employer; (vii) whether the Plaintiffs' implied-contract claim can prevail when federal and state statutes form the basis of the contract; and (viii) whether the Plaintiffs' unjust-enrichment claim can proceed when the Plaintiffs have other legal remedies available.  The Court grants the MSJ as to Count Two of the Complaint for Violations of the Fair Labor Standards Act, State Wage and Hour Laws, Breach of Contract and Unjust Enrichment Collective Action Complaint (29 U.S.C. § 216(b)) ¶ 1, at 1-2, filed October 8, 2013 (Doc. 1), because: (i) Jimenez fails to present evidence to meet her burden of proof under the FLSA concerning the number of overtime hours worked; (ii) Jimenez' pre- and post-shift work is not compensable as a matter of law, as it was not integral and indispensable to Jimenez' principal activities; (iii) all of Jimenez' pre- and post-shift work except for transcribing notes into radio logs is not compensable as de minimis; and (iv) Jimenez' on-call work is not compensable under the FLSA.  The Court therefore grants the MSJ as to the Plaintiffs' federal claims in Count Two. The Court declines to exercise supplemental jurisdiction over Jimenez' state law claims, and therefore dismisses Counts One, Three, and Four without prejudice.

## FACTUAL BACKGROUND

Jimenez and other proposed class members are emergency dispatchers at the Hidalgo County Central Emergency Dispatch Center in Lordsburg, New Mexico.  See Defendant Board of County Commissioners of the County of Hidalgo's Motion and Memorandum for Summary Judgment on All of Plaintiff Martha S. Jimenez's Claims ¶ 1, at 2, filed November 12, 2014 (Doc. 40)("MSJ")(setting forth this fact); Plaintiffs' Response to Defendant's Motion and Memorandum for Summary Judgment on All of Plaintiff Martha Jimenez's Claims ¶ 1, at 1, filed December 11, 2014 (Doc. 48)("Response")(not disputing this fact).  They answer 911 calls and send law enforcement, medical, rescue, and fire personnel to assist callers.  See Complaint for

Violations of the Fair Labor Standards Act, State Wage and Hour Laws, Breach of Contract and Unjust Enrichment Collective Action Complaint (29 U.S.C. § 216(b)) ¶¶ 8-10, at 2-3, filed October 8, 2013 (Doc. 1)("Complaint").  As the Dispatch Center operates all day, and every day, a dispatcher must be present at all times.  See MSJ ¶ 3, at 2 (setting forth this fact); Response ¶ 3, at 1 (not disputing this fact).  Dispatchers are not allowed to leave their posts until the incoming employee for the next shift relieves them.  See Complaint ¶ 11, at 3; Defendant's Answer to Plaintiff's Complaint for Violations of the Fair Labor Standards Act, State Wage and Hour Laws, Breach of Contract and Unjust Enrichment Collective Action Complaint (29 U.S.C. § 216(b)) ¶ 11, at 3, filed November 7, 2013 (Doc. 5)("Answer").

The Hidalgo County Policies and Procedures Manual ("Manual") states that dispatchers are expected to report to work five minutes before their shift.  See Response ¶ 2, at 6 (setting forth this fact).[2]  Dispatchers may be subject to discipline for violating requirements in the

---

[2]Hidalgo County states that it disputes this fact, but that it is immaterial.  See Reply ¶ 2, at 6.  The Hidalgo County Policies and Procedures Manual supports the Plaintiffs' material fact. Hidalgo County Policies and Procedures Manual at 2, filed September 30, 2014 (Doc. 33-8)("Manual")("Dispatchers are expected to arrive to work and be in the center at least 5 minutes before their shift. . . .  This allows the dispatcher to listen to the outgoing dispatcher shift briefing report.  This is just considered good work ethics and more so courtesy for your co-workers."). The local rules state:

> The Reply must contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection. Each fact must be lettered, must refer with particularity to those portions of the record upon which the movant relies, and must state the letter of the non-movant's fact.  All material facts set forth in the Response will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  Contending that a fact is not material does not dispute the fact, nor does it controvert the fact by directing the Court with particularity to the record.  See D.N.M.LR-Civ. 56.1(b).  In O'Brien v. Mitchell, 883 F. Supp. 2d 1055 (D.N.M. 2012)(Browning, J.), the Court explained that, because the proper course is to determine relevance of facts in the analysis

Hidalgo County Policies and Procedures Manual.  See Response ¶ 3, at 6 (setting forth this fact); Defendant Hidalgo County's Reply in Support of its Motion for Summary Judgment on Plaintiff Martha Jimenez's Claims ¶ 3, at 1, filed January 9, 2015 (Doc. 52)("Reply")(not disputing this fact).  Before taking over operations from the outgoing dispatcher, the incoming dispatcher must put on a headset, sign into radio logs[3] and computer systems, check incoming NCIC files,[4] review desk logs,[5] and have a briefing with the outgoing dispatcher.  See Response ¶ 4, at 7 (setting forth this fact).[6]

---

section, rather than in the factual section, objecting to an asserted fact as immaterial effectively deems the fact undisputed.  See 883 F. Supp. 2d at 1058 n.1.  The Court thus deems this fact undisputed and will, if necessary, determine its materiality in the analysis section.

In Hidalgo County's Reply, it argues that almost every additional fact that the Plaintiffs assert in their Response is disputed, but immaterial.  Hidalgo County provides no evidence to dispute the fact.  Arguments concerning the materiality of facts do not dispute those facts.  See D.N.M.LR-Civ. 56.1(b); O'Brien v. Mitchell, 883 F. Supp. 2d at 1058 n.1.  For the remaining facts asserted in the Response that are disputed as immaterial or irrelevant, the Court will deem them undisputed and not individually address the dispute that each fact is immaterial in the fact section.  See Walton v. N.M. State Land Office, 49 F. Supp. 3d 920, 924 n.2 (D.N.M. 2014)(Browning, J.).

[3]Emergency dispatchers must record summaries of each emergency call into a log, known as a "radio log," describing what transpired during the call and which emergency vehicles the dispatcher sent to address the situation.  See Deposition of Martha Jimenez at 33:20-24 (Jimenez), taken August, 19, 2014 (Doc. 40-1)("Jimenez Depo.") at 33:20-24.

[4]The NCIC database "is a computerized index of criminal justice information (i.e., criminal record history information, fugitives, stolen properties, missing persons)."  National Crime Information Center, FEDERAL BUREAU OF INVESTIGATION, http://fas.org/irp/agency/doj/fbi/is/ncic.htm (last visited Sept. 30, 2015).  See Jimenez Depo. at 119:5-20 (Jimenez).

[5]Desk logs documented the calls received, whether for emergency assistance or law enforcement.  See Jimenez Depo. at 36:13-17.

[6]Hidalgo County states that it disputes this fact, but that it is immaterial.  The Manual instructs incoming dispatchers to perform these tasks.  See Manual at 2 (directing dispatchers to perform tasks before taking over operations from the outgoing dispatcher).  Because Hidalgo

During the briefing, the outgoing dispatcher informs the incoming dispatcher "what was going on, what units they have going out, who is where, and what to expect."  MSJ ¶ 10, at 3 (setting forth this fact).  See Response ¶ 10, at 2 (not disputing this fact).  Jimenez' pre-shift work took approximately five to ten minutes to perform.  See MSJ ¶ 9, at 3 (setting forth this fact); Response ¶ 9, at 2 (not disputing this fact).  After her shift, Jimenez would "sometimes stay beyond her scheduled shift, if necessary, until everybody was at what she calls a 'safe zone.'  A 'safe zone' is when paramedics were treating a person, or there were officers on the scene."  MSJ ¶ 11, at 3 (setting forth this fact).  See Response ¶ 11, at 2 (not disputing this fact).  Jimenez could not recall how often or how long her other colleagues worked past their shifts.  See Response ¶ 10, at 8 (setting forth this fact).[7]

Hidalgo County instructed incoming dispatchers to record their time at the beginning of their shift or "whatever time [they] got in."  MSJ ¶ 12, at 3 (setting forth this fact).  See Response ¶ 12, at 2 (not disputing this fact).  Jimenez "got the impression she would only be compensated for the time she was scheduled to work."  MSJ ¶ 15, at 4 (setting forth this fact).  See Response ¶ 15, at 2 (not disputing this fact).  "It was Jimenez's responsibility to ensure the hours she worked were reported correctly."  MSJ ¶ 40, at 7 (setting forth this fact).  See Response ¶ 40, at 5 (not disputing this fact).  Hidalgo County did not give her any documentation stating that she would

---

County puts forth no evidence to dispute this fact, the Court deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b).

[7]Hidalgo County states that it disputes this factual assertion, but that it is immaterial.  The evidence supports the Plaintiffs' material fact.  See Jimenez Depo. at 104:13-16 ("I know that some of them stayed later, I mean to finish off.  But I couldn't tell you how many.  It just varied on their day, I guess.").  Because Hidalgo County puts forth no evidence to dispute this fact, the Court deems this fact undisputed.  See D.N.M.LR-Civ. 56.1(b).

not be paid overtime if she worked over her scheduled shift.  See MSJ ¶ 16, at 4 (setting forth this fact); Response ¶ 16, at 2 (not disputing this fact).  Nevertheless, she believed that, "if she worked overtime hours, she would not be compensated for that time."  MSJ ¶ 17, at 4 (setting forth this fact).  See Response ¶ 17, at 2 (not disputing this fact).  "Jimenez does not remember making an overtime request that was denied."  MSJ ¶ 23, at 4 (setting forth this fact).  See Response ¶ 23, at 3 (not disputing this fact).

"During the 'early' years of her employment with Hidalgo County, beginning in about 2005, [Jimenez] regularly worked 'two and a half hours' over her scheduled shift," because she was backlogged on recording the day's events into the radio logs.  MSJ ¶¶ 24-25, at 5 (setting forth this fact).  See Response ¶¶ 24, 25, at 3 (not disputing this fact).  Jimenez' supervisor once told her that Hidalgo County would not compensate her for this time.  See MSJ ¶ 25, at 5 (setting forth this fact); Response ¶ 25, at 3 (not disputing this fact).  Jimenez could not recall how long she worked under these conditions.  See MSJ ¶ 26, at 5 (setting forth this fact); Response ¶ 26, at 3 (not disputing this fact).  She also could not recall whether she ever worked past her shift because she was backlogged in 2013.  See MSJ ¶ 27, at 5 (setting forth this fact);[8] Deposition of

---

[8]The Plaintiffs do not specifically dispute that Jimenez could not recall working past her shift in 2013.  They instead argue that the "initial questioning of Plaintiff Jimenez about her overtime hours in 2013 was not clear."  Response ¶ 27, at 3.  They assert that, when the question was clear, she testified that she worked late "about one and a half or two hours, depending on the type of shift worked."  Response ¶ 27, at 3-4.  The original question, however, was clear.  It asked: "[W]as there ever a time in 2013 when you were required to stay because you were backlogged?"  Jimenez responded: "I don't remember, but I don't think so."  Jimenez Depo. at 59:1-11 (Jimenez, Padilla).  The local rules state:

> Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

Martha Jimenez at 59:1-11 (taken August, 19, 2014)(Jimenez, Padilla), filed November 12, 2014 (Doc. 40-1)("Jimenez Depo."). Moreover, Jimenez also could not recall working past her shift in 2012 or 2011. See MSJ ¶¶ 28, 29, at 5 (setting forth this fact); Jimenez Depo. at 59:5-16 (Jimenez, Padilla).[9] Finally, Jimenez stated that she had no sense for the total amount of time she worked without compensation. See MSJ ¶ 41, at 7 (setting forth this fact).[10]

After taking a break, "when questioned by her attorney, Jimenez then testified that in 2011, 2012, and 2013 she recalled working an hour and a half to two hours over her shift." MSJ ¶ 30, at 5 (setting forth this fact). See Response ¶ 30, at 4 (not disputing this fact). To help her remember, Jimenez "said a little prayer to help remember stuff." MSJ ¶ 31, at 5-6 (setting forth this fact). See Response ¶ 31, at 4 (not disputing this fact). Jimenez then testified that in 2013, she "was not required to work beyond her scheduled shift." MSJ ¶ 33, at 6 (setting forth this

---

D.N.M.LR-Civ. 56.1(b). Because the Plaintiffs put forth no evidence demonstrating that Jimenez did not testify accordingly, the Court deems Hidalgo County's factual assertion undisputed. See D.N.M.LR-Civ. 56.1(b).

[9]The Plaintiffs again contend that the record does not support the fact that Jimenez could not recall staying late in 2011 or 2012, because the question was allegedly unclear. The question asked is: "Do you remember if there was ever a time in 2012 when you were required to stay because of backlog?" Jimenez Depo. at 59:1-11 (Jimenez, Padilla). Jimenez responded: "I don't remember." Because the Plaintiffs put forth no evidence demonstrating that Jimenez did not testify accordingly, the Court deems Hidalgo County's factual assertion undisputed. See D.N.M.LR-Civ. 56.1(b).

[10]The Plaintiffs do not dispute that Jimenez testified accordingly. They instead state that she later gave estimates of how much time she feels she worked without compensation. The evidence in the record supports that Jimenez testified that she had no sense how much uncompensated work she performed. See Jimenez Depo. at 91:10-12; id. at 16-18. Because the Plaintiffs do not introduce evidence to contradict Hidalgo County's factual assertion, it is deemed undisputed. See D.N.M.LR-Civ. 56.1(b).

fact).  See Response ¶ 33, at 4 (not disputing this fact).  "Jimenez could not produce personal documentation of all hours of overtime worked."  Response ¶ 32, at 4 (setting forth this fact).[11]

When incoming dispatchers were running late, the outgoing dispatcher would stay until the incoming dispatcher arrived.  See MSJ ¶¶ 34-37, at 6 (setting forth this fact); Response ¶¶ 34-37, at 4-5 (not disputing this fact).  In these circumstances, dispatchers who stayed late would be "relieved of equal time of work later in the same pay period."  MSJ ¶ 34, at 6 (setting forth this fact).  See Response ¶ 34, at 5 (not disputing this fact).  For example, "if Jimenez worked nine hours, she would record nine hours on her time sheet.  But then two or three days later, she would put in seven hours for that day because the person she was covering would come in an hour early for her."  MSJ ¶ 35, at 6 (setting forth this fact).  See Response ¶ 35, at 5 (not disputing this fact).  If Jimenez arrived twenty minutes late, she would make up the twenty minutes at the shift's back end, or come in twenty minutes early for another shift "to pay back the dispatcher that covered for her late arrival earlier in the pay period."  MSJ ¶ 36, at 6 (setting forth this fact).  See Response ¶ 36, at 5 (not disputing this fact).

## PROCEDURAL BACKGROUND

The Plaintiffs filed suit in the United States District Court for the District of New Mexico on October 8, 2013.  See Complaint at 1.  They allege four causes of action: (i) violation of the New Mexico state wage and hour laws, N.M. Stat. Ann. § 50-4-1 to -30, see Complaint ¶¶ 20-22,

---

[11]The Plaintiffs assert that, although Jimenez has no documentation of hours worked, "she gave a detailed explanation . . . to give an indication of working uncompensated time."  Response ¶ 32, at 4.  The Plaintiffs do not dispute Material Fact No. 32.  They did not introduce any evidence documenting her alleged overtime, and Jimenez testified she did not document this time anywhere.  See Response ¶ 32, at 4; id. at 11; Jimenez Depo. at 54:7-24 (Jimenez, Padilla).  Because the Plaintiffs introduce no evidence documenting her overtime, the Court deems it undisputed that she has no such evidence.  See D.N.M.LR-Civ. 56.1(b).

at 4; (ii) FLSA violations, <u>see</u> Complaint ¶¶ 23-27, at 4-5; (iii) breach of their employment contracts, <u>see</u> Complaint ¶¶ 28-31, at 5; and (iv) unjust enrichment, in the form of free hours worked, <u>see</u> Complaint ¶¶ 32-36, at 5-6.  The Plaintiffs demand a jury trial, <u>see</u> Complaint ¶ 37, at 6, and ask that the case proceed as a "collective action" under 29 U.S.C. § 216(b), and that they receive compensatory and liquidated damages, including pre- and post-judgment interest, and costs and attorneys' fees, Complaint ¶¶ a-f, at 6.

Hidalgo County answered the Complaint within one month.  <u>See</u> Answer at 1.  It admits that the Plaintiffs are not allowed to leave their posts until the incoming employee for the next shift relieves them, <u>see</u> Answer ¶ 11, at 3, but it denies that the dispatchers are required to reconcile radio logs after the end of their shift, <u>see</u> Answer ¶ 10, at 3.  Hidalgo County contends that, in fact, the dispatchers "are required to reconcile call logs at the end of each call."  Answer ¶ 10, at 3.  It "admits Plaintiffs are scheduled and paid for the length of their shifts for time actually worked by each employee," but it denies the allegations that the Plaintiffs are required to work beyond their scheduled shift.  Answer ¶ 12, at 3.  It also denies the Plaintiffs' claims of unpaid on-call time, asserting that "only detectives and corporals are on call."  Answer ¶ 15, at 4.

The Plaintiffs filed a Motion to Certify Class on behalf of Plaintiffs Martha S. Jimenez and Amanda Vogelsang-Wolf on September 30, 2014.  <u>See</u> Motion to Certify Class at 1, filed September 30, 2014 (Doc. 33)("Motion").  They requested that the Court "conditionally" certify Count Two, the FLSA claim, as a collective action under 29 U.S.C. § 216(b), and that the Court certify the other three claims as a class action under rule 23(b)(3).  Motion at 7.  <u>See id.</u> at 3.  The Court conditionally certified the case as a collective action under the FLSA's § 216(b).  <u>See</u> Memorandum Opinion and Order, filed September 16, 2015 (Doc. 60)("MOO").  Because the Plaintiffs had not at that time put forth sufficient facts showing the proposed class' compliance

with rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, the Court denied the request for class certification without prejudice to all them to renew their motion later when and if they could support it with evidence.  See MOO at 85.

Hidalgo County filed its MSJ on November 12, 2014.  See MSJ at 1.  It argues for summary judgment on all of Jimenez' claims.  First, it argues that Jimenez cannot meet her burden of proving the amount of unpaid overtime work she allegedly performed.  See MSJ at 8-10.  In FLSA actions for overtime, plaintiffs bear the burden of proof to establish the number of overtime hours worked and the amount of wages due.  See MSJ at 9.  Hidalgo County argues that Jimenez "has no sense for how much time she feels she worked without compensation" and "has no documentation of the time she believes she was not fairly compensated."  MSJ at 9.  Hidalgo County asserts that Jimenez' testimony alone is insufficient to meet her burden of proof.  See MSJ at 13.  Moreover, Hidalgo County contends that, even if Jimenez performed overtime work, Hidalgo County had no knowledge of it and therefore the Court should dismiss her claims.  See MSJ at 13-14.

Hidalgo County next argues that Jimenez' pre-shift work is not compensable under the FLSA as a matter of law.  Specifically, Hidalgo County argues that the "Portal-to-Portal Act excludes from compensation certain preliminary and postliminary activities, including pre-shift walking and in some instances the donning and doffing of required clothing and gear."  MSJ at 15.  Hidalgo County argues that, although mandatory pre-shift briefings may constitute the basis for an FLSA overtime violation in some instances, Jimenez cannot recover for three reasons. See MSJ at 18.  First, Hidalgo County asserts that Jimenez "cannot establish that she engaged in alleged pre-shift briefing that exceeded the FLSA's 40 hour threshold."  MSJ at 18.  Second, Hidalgo County contends that Jimenez' pre-shift activities are "not compensable because they

are not essential to Jimenez's principal tasks as a dispatcher."  MSJ at 18.  Third, Hidalgo County asserts that Jimenez' pre-shift work constitutes de minimis work that takes only a few extra minutes to perform.  See MSJ at 18.

Next, Hidalgo County argues that Jimenez' on-call "claims are precluded as a matter of law."  MSJ at 20.  It asserts that case law and Department of Labor regulations demonstrate that time spent on-call may be compensable only when the employee is "on duty."  MSJ at 20.  Hidalgo County states that, when employees are on-call while "off duty," like Jimenez, they cannot obtain compensation under the FLSA.  MSJ at 20.  Finally, Hidalgo County asserts that the Plaintiffs' three state law claims cannot proceed.  See Response at 12.  Although Count One alleges violations of New Mexico statutory law, Hidalgo County argues that the provisions the Plaintiffs cited do not apply to it, because it is a public employer.  See Response at 12.  It states that Count Three, the breach-of-contract claim, is likewise invalid, because "'an agreement to do what one is already legally bound to do is not sufficient consideration for the promise to another.'"  Response at 13 (quoting Salazar v. City of Albuquerque, 2013 WL 5554185, at *46 (D.N.M. Aug. 20, 2013)(Browning, J.)).  It argues that Count Four, for unjust enrichment, is derivative of the FLSA claim, because Hidalgo County's enrichment is unjust only because of the alleged FLSA violations.  See Response at 13-14.

The Plaintiffs responded on December 11, 2014.  See Response at 1.  Jimenez first argues that she meets her burden to establish the number of overtime hours she worked.  See Response at 11.  She argues that she "estimated her overtime burden as approximately 1.5 to 2 hours of overtime work per week in recent years, depending on the shift she was working."  Response at 11.  Second, she argues that Hidalgo County knew she performed overtime because the Dispatch Center's policies required pre-shift briefings.  See Response at 13.  Third, she asserts that the

FLSA compensates the pre- and post-shift work she performed.  See Response at 13-15.  She argues that her activities "go well beyond just the donning and doffing of uniforms and equipment or trivial preparation for a shift."  Response at 14.  Finally, she asserts that her on-call time required her to give up various freedoms, making it compensable.  See Response at 15.

## LAW REGARDING THE FLSA

The FLSA requires covered employers to pay a minimum wage, and to pay their nonexempt employees overtime pay of time and one half their regular rate of pay for hours worked in excess of forty in a work week.  See 29 U.S.C. §§ 206-207.  The FLSA provides five means of enforcement: (i) criminal prosecutions for willful violators, see 29 U.S.C. § 216(a); (ii) individual civil causes of action to recover unpaid minimum wages, overtime compensation and certain liquidated damages, see 29 U.S.C. § 216(b); (iii) collective actions to recover damages, which are basically opt-in class actions, see 29 U.S.C. § 216(b); (iv) a cause of action allowing the Secretary of the Department of Labor to recover employees' damages and for additional recovery of "an equal amount of liquidated damages," 29 U.S.C. § 216(c); and (v) a suit for injunctive relief, see 29 U.S.C. § 217.  "The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981)(alterations in original)(quoting 29 U.S.C. § 202(a)).

### 1.      The FLSA's Minimum Wage, Overtime, and Records Requirements.

The FLSA's § 7 requires employers to pay covered employees who, in a given workweek, work more than forty hours "at a rate not less than one and one-half times the regular

rate at which [the employee] is employed."  29 U.S.C. § 207(a)(1).  "The purpose of FLSA overtime is 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.'"  Chavez v. City of Albuquerque, 630 F.3d 1300, 1304 (10th Cir. 2011)(Briscoe, J.).  The United States Court of Appeals for the Tenth Circuit has recognized "that a contract cannot designate an artificially low regular rate in order to reduce the minimum statutory overtime due . . . , [as] parties cannot avoid the purposes of the FLSA by designating a fictitious regular rate."  Chavez v. City of Albuquerque, 630 F.3d at 1305 (citing Walling v. Wall Wire Prods. Co., 161 F.2d 470, 473 (6th Cir. 1947)).

Under the FLSA, an employer must pay its employees for the time that it "employ[s]" them, the statutory definition of which means "to suffer or permit to work."  29 U.S.C. § 203(g). See 29 C.F.R. § 785.6 ("By statutory definition the term 'employ' includes (section 3(g)) 'to suffer or permit to work.'  The act, however, contains no definition of 'work.'").  "'The test for whether an employee's time constitutes working time is whether the time is spent predominantly for the employer's benefit or for the employee's.'"  United Transp. Union Local 1745 v. City of Albuquerque, 178 F.3d 1109, 1116 (10th Cir. 1999)(quoting Gilligan v. City of Emporia, 986 F.2d 410, 412 (10th Cir. 1993)).  The Supreme Court of the United States of America has rejected the argument that Congress' intent in enacting the FLSA was to compensate employees "for all actual work . . . as those words are commonly used -- as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  Armour & Co. v. Wantock, 323 U.S. 126, 132 (1944)(quoting Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944)).  The Supreme Court explained:

[A]n employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.  Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity.  Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer.  Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.

Armour & Co. v. Wantock, 323 U.S. at 133.

The FLSA's § 6 requires employers to pay their employees a minimum wage.  See 29 U.S.C. § 206(a).  Deductions from employees' paychecks, for whatever reason, that bring the employees' pay under the minimum wage violates § 6.  See Donovan v. Simmons Petrol. Corp., 725 F.2d at 84 (holding that the employer's deductions of "cash register shortages and the amount of uncollectible checks accepted by its employees from the paychecks of employees who were on duty when the shortages occurred" was a willful FLSA violation).  Cf. Dole v. Solid Waste Servs., Inc., 733 F. Supp. 895, 924 (E.D. Pa. 1989)(finding that deductions "for lunch breaks during which [employees were] required to continue with any duties relating to . . . work," bringing employees below minimum wage, violated the FLSA).  Additionally, the FLSA's § 11 imposes on an employer a duty to "make, keep, and preserve" records of its employees' wages, hours, and "other conditions and practices of employment" that the employer may maintain.  29 U.S.C. § 211(c).  In Donovan v. Simmons Petroleum Corp., the Tenth Circuit recognized the employers' duty under the FLSA to keep accurate records in discussing the shift of the burden to prove damages between the employee and the employer:

> The employee bears the burden of proving he performed work for which he was not properly compensated.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946).  However, employers have a duty to keep accurate records. If employers do not keep accurate records the employee's burden is extremely difficult.   In order to prevent the employee from being penalized by the employer's failure to keep adequate records, the Supreme Court held in Anderson

- 14 -

> that an employee carries his burden by proving that he has "in fact performed work for which he was improperly compensated and . . . [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. Upon such a showing, the burden shifts to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference drawn from the employee's evidence. If the employer does not rebut the employee's evidence, then damages may be awarded even though the result is only approximate. The employer cannot complain that the damages lack the precision that would have been possible if the employer had kept the records required by law. Id. at 687-88.

Donovan v. Simmons Petroleum Corp., 725 F.2d at 85-86. The federal Department of Labor's Wage and Hour Division requires that employers must maintain in their records the time of day and day of the week on which the employee's workweek begins, the regularly hourly pay rate for the employee in any week in which overtime compensation is due, the hours worked each workday and workweek, the total daily or weekly straight-time earned, and the total overtime. See 29 C.F.R. § 516.2(a). Where an employer violates its § 211(c) record-keeping duties, including by not counting time worked before and after an employee's shift begins, the employer cannot meet its burden to rebut the Labor and Wage investigators' reasonable estimates of backpay due to the employees. See U.S. Dep't of Labor v. Cole Enters., Inc., 62 F.3d 775, 781 (6th Cir. 1995)("We agree with the district court's conclusion that the calculations of the investigator are a reasonable and generous estimate of the back wages due to the Defendants' employees for the pre-shift and postshift hours worked."); Metzler v. IBP, Inc., 127 F.3d 959, 965–66 (10th Cir. 1997)("When the employer has failed to record compensable time . . . , [t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [29 U.S.C. § 211(c) ].").

Section 7(a) sets forth the general rule for calculating overtime. <u>See</u> 29 U.S.C. § 207(a)(1).  Because the FLSA does not put a limit "on the number of hours that an employee may work in any workweek, he may work as many hours a week as he and his employer see fit, [but, the employer must pay] the required overtime compensation . . . for hours worked in excess of the maximum workweek prescribed by section 7(a)."  29 C.F.R. § 778.102.  The statute states:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  <u>See</u> 29 C.F.R. § 778.107 ("The general overtime pay standard in section 7(a) requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed.").  The statute's language demands that an employee receive one and one-half times the "regular rate" of pay for hours that he works in excess of forty in a given week.

One important principle is that FLSA overtime is based on the number of hours worked in a particular workweek.

> The Act does not . . . require . . . that an employee be paid overtime compensation for hours in excess of eight per day, or for work on Saturdays, Sundays, holidays or regular days of rest.  If not more than the maximum hours prescribed in the Act are actually worked in the workweek, overtime pursuant to section 7(a) need not be paid.

29 C.F.R. § 778.102.  On the other hand, that the FLSA does not require that the employer pay overtime for those hours does not relieve an employer from paying overtime for them if the contract of employment demands them.  <u>See</u> 29 C.F.R. § 778.102.

For the purposes of calculating overtime under the FLSA, however, the only concern is whether the total hours worked in a given workweek are above or below the statutory

requirement for overtime compensation.  See 29 C.F.R. § 778.102.  A second important principle about calculating overtime under the FLSA is that the employee must receive overtime pay at a rate of no less than one and one-half times the "regular rate" for which the employer employs the employee.  Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)("The keystone of Section 7(a) is the regular rate of compensation.").  The Supreme Court described "the regular rate" as "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."  Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. at 424.  Since the Court's opinion in Walling v. Youngerman-Reynolds Hardwood Co., Congress has amended the FLSA to include a description of regular rate, see 29 U.S.C. § 207(e) ("[T]he 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," with eight statutory exceptions),[12] and the interpretive bulletins have incorporated the Supreme Court's definition, see 29 C.F.R. § 778.108 ("The Supreme Court has described it as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed -- an 'actual fact.'").  Generally, the exceptions include overtime pay and compensation that is discretionary on the employer's part.  See 29 C.F.R. § 779.108.

---

[12]The FLSA now contains a description of what is included in the regular rate, but still contains no definition precisely setting forth how it is calculated.  See Scott v. City of New York, 592 F. Supp. 2d 475, 482 (S.D.N.Y. 2008)(Scheindlin, J.)("The words 'regular rate' are not defined in the Act." (quoting Walling v. Helmerich & Payne, Inc., 323 U.S. at 40)(internal quotation marks omitted)).

2.      **Compensable Time Under the FLSA**.

Congress enacted the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-262, to define certain activities that employers need not compensate pursuant to the FLSA.[13]  The Portal-to-Portal Act excludes from compensation certain preliminary and postliminary activities, like pre-shift walking and, in some cases, changing clothes and putting on specific gear.  See Steiner v. Mitchell, 350 U.S. 247, 252 (1956); Reich v. IBP, Inc., 38 F.3d 1123, 1126 (10th Cir. 1994)(holding that the donning and doffing of safety glasses, ear plugs, a hard hat, and safety shoes are non-compensable preliminary and postliminary activities).  Under Department of Labor regulations explaining the Portal-to-Portal Act, see 29 C.F.R. § 790.6 (1947), the workday begins with the "first principal activity" and ends with the last, see IBP, Inc. v. Alvarez, 546 U.S. 21, 34 (2005).

The Supreme Court clarified what constitutes a "principal activity" in IBP, Inc. v. Alvarez.  See 546 U.S. at 34.  It held that anything that is "integral and indispensable" to a

---

[13]The Portal-to-Portal Act provides:

[N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee . . . --

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a)(emphasis added).

- 18 -

"principal activity" is itself a "principal activity" under the Portal-to-Portal Act, which makes it compensable.   546 U.S. at 37.   The Supreme Court noted that, to the extent that standard protective clothing and gear are "integral and indispensable" to a principal activity, the donning and doffing of those items are principal activities and are therefore compensable.  546 U.S. at 36-37.   Accordingly, the key issue to determining compensability is whether the pre-shift activities are integral and indispensable to the employee's principal activities.   See Lindow v. United States, 738 F.2d 1057, 1060 (9th Cir. 1984)(Choy, J.)(finding that pre-shift activities may be compensable if they are an "integral and indispensable" part of the principal activities).

The Tenth Circuit has interpreted what constitutes preliminary, non-compensable activities.   In Smith v. Aztec Well Servicing Co., 462 F.3d 1274 (10th Cir. 2006), the plaintiffs argued that they were entitled to compensation for time spent loading their trucks with safety and protective gear, then traveling to the job site.   See 462 F.3d at 1276-77.   The Tenth Circuit acknowledged that, if the plaintiffs' first principal activity -- loading their trucks with protective gear -- occurred before traveling to the job site, then the plaintiffs' travel time constituted compensable work.  462 F.3d at 1289.  Nonetheless, the Tenth Circuit explained that, where

> an employee's activity "takes all of a few seconds and requires little or no concentration," then the activity is "properly considered not work at all." Moreover, "[r]equiring employees to show up at their work stations with such standard equipment [as a hard hat, safety glasses, earplugs, and safety shoes] is no different from having a baseball player show up in uniform, . . . or a judge with a robe."  It is simply a prerequisite for the job, and is purely preliminary in nature. Consequently, the plaintiffs' travel to and from the well sites was not integral and indispensable to their principal activities merely because they were required to carry their personal safety equipment along with them.

462 F.3d at 1289 (quoting Reich v. IBP, Inc., 38 F.3d at 1125, 1126 n.1).   In arriving at its decision that loading protective gear into the truck was not integral and indispensable to the plaintiffs' job, the Tenth Circuit considered the amount of time it took and the level of

concentration.  The safety equipment was clearly required to do the job, yet the Tenth Circuit still found that it was not integral and indispensable to the employees' principal activities. Similarly, in Reich v. IBP, Inc., the Tenth Circuit held that putting on safety glasses, ear plugs, a hard hat, and safety shoes was not compensable, because it "requires little or no concentration," and can easily be done while focusing on other things.  38 F.3d at 1126.  "Thus, although essential to the job, and required by the employer, any time spent on these items is not work."  38 F.3d at 1126.  In contrast, putting on special protective gear that was "heavy and cumbersome," and required "physical exertion, time, and a modicum of concentration to put them on securely and properly," was compensable, as this donning differed in kind rather than merely degree.  38 F.3d at 1126.

Because mandatory pre-shift briefings may be integral and indispensable to an employee's principal activities, they may form the basis of an FLSA overtime violation.  That "certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable,'" however.  IBP, Inc. v. Alvarez, 546 U.S. at 40.  An activity is integral and indispensable if it is an "intrinsic element" of the employee's principal activities, and one with which the employee cannot dispense if he or she is to perform his or her principal activities.  See Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. 513, 514 (2014).  Consequently, the Supreme Court has held that time spent waiting to don protective gear is not compensable, while time spent sharpening knives at a meatpacking plant was compensable, as dull knives would slow the assembly line production, cause waste, lead to accidents, and "affect the appearance of the meat as well as the quality."  135 S. Ct. at 518 (quoting Mitchell v. King Packing Co., 350 U.S. 260, 262 (1956)).  In other words, the employees could not perform their jobs adequately without sharpening their knives.

- 20 -

Recently, the Supreme Court held that time spent undergoing mandatory security screenings were not compensable.  See Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 518.  The Supreme Court stated that, although the employer required employees to undergo the screenings, the screenings were not integral and indispensable to the principal task they were paid to perform -- stocking warehouse shelves and packaging products.  See 135 S. Ct. at 519.  Importantly, the Supreme Court stated that the "Court of Appeals erred by focusing on whether an employer *required* a particular activity.  The integral and indispensable test is tied to the productive work that the employee is *employed to perform*."  135 S. Ct. at 519 (emphasis in original).  Moreover, the Supreme Court held that it was not determinative whether the task benefitted the employer.  See 135 S. Ct. at 519.

> [I]t is not enough to make an activity compensable under the Fair Labor Standards Act that the employer requires it and it is done for the benefit of the employer.  Even activities required by the employer and for the employer's benefit are "preliminary" or "postliminary" if not integral and indispensable to "the productive work that the employee is *employed to perform*."

Balestrieri v. Menlo Park Fire Prot. Dist., 2015 WL 5166732, *5 (9th Cir. 2015)(Kleinfeld, J.)(quoting Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 519).

Finally, the Supreme Court reaffirmed its statement that, if the employee need not perform a task before every shift or the task can be eliminated altogether, it is not integral and indispensable.  See Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 513 (finding that an activity was not integral and indispensable when the employees did not participate in them every day); id. at 518 (finding that activities were not integral and indispensable if the employer could have eliminated the required practice without impairing the employees' ability to complete their work).  Unlike activities that are "*always* essential if the worker is to do his job," certain activities "may or may not be necessary in particular situations or for every employee."  IBP,

- 21 -

Inc. v. Alvarez, 546 U.S. at 40.  When certain tasks are not necessary, the activity "comfortably

qualif[ies] as a 'preliminary' activity."  IBP, Inc. v. Alvarez, 546 U.S. at 40.

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the

initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving

party's case.'"  Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013)

(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th

Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If the *moving* party will

bear the burden of persuasion at trial, that party must support its motion with credible evidence --

using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if

not controverted at trial."  Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)

(emphasis in original).[14]  Once the movant meets this burden, rule 56 requires the nonmoving

party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp.

v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts

showing that there is a genuine issue for trial as to those dispositive matters for which it carries

_____

[14]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme
Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely
understood to be an accurate statement of the law.  See 10A Charles Allen Wright & Arthur R.
Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued
a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment
burden of proof operates; they disagreed as to how the standard was applied to the facts of the
case.").

the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (citation omitted)(internal quotation marks omitted)).

Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. CIV 07-2123 JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that

- 23 -

something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254. Third, the court must resolve all reasonable

- 24 -

inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts.  550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . .  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in <u>Thomson v. Salt Lake County</u>, 584 F.3d 1304

(10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the
> litigation, a plaintiff's version of the facts must find support in the record:
> more specifically, "[a]s with any motion for summary judgment, when opposing parties
> tell two different stories, one of which is blatantly contradicted by the record, so
> that no reasonable jury could believe it, a court should not adopt that version of
> the facts." <u>York v. City of Las Cruces</u>, 523 F.3d 1205, 1210 (10th Cir. 2008)
> (quoting <u>Scott [v. Harris]</u>, 550 U.S. at 380); <u>see also</u> <u>Estate of Larsen ex rel.
> Sturdivan v. Murr</u>, 511 F.3d 1255, 1258 (10th Cir. 2008).

<u>Thomson v. Salt Lake Cnty.</u>, 584 F.3d at 1312 (brackets omitted).  "The Tenth Circuit, in <u>Rhoads</u>

<u>v. Miller</u>, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),[15]] explained that the

blatant contradictions of the record must be supported by more than other witnesses'

testimony[.]"   <u>Lymon v. Aramark Corp.</u>, 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)

(Browning, J.)(citation omitted).

> In evaluating a motion for summary judgment based on qualified immunity, we
> take the facts "in the light most favorable to the party asserting the injury." <u>Scott
> v. Harris</u>, 550 U.S. 372, 377 (2007).   "[T]his usually means adopting . . . the
> plaintiff's version of the facts," <u>id.</u> at 378, unless that version "is so utterly

---

[15]<u>Rhoads v. Miller</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its
> disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that <u>Rhoads v. Miller</u>, <u>Sarmiento v. City and Cnty. of Denver</u>, 82 F.3d 426 (10th Cir. 1996), and <u>Whitaker v. Pacific Enter. Oil Co.</u>, 956 F.2d 1170 (10th Cir. 1992) have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

discredited by the record that no reasonable jury could have believed him," id. at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events.  550 U.S. at 379.  Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury. And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility . . . . Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation. If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted).  See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92).

In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court," before inquiring into whether there are genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts").

## **ANALYSIS**

The Court will grant Hidalgo County's MSJ as to all of the Complaint's federal claims. Because no federal claims remain after the Court dismisses Count Two, the Court declines to exercise supplemental jurisdiction over the remaining state law claims -- Counts One, Three, and

Four.  The Court dismisses Jimenez' state law claims without prejudice to allow her to raise

them in state court.

I.      **THE PLAINTIFFS DO NOT DEMONSTRATE THAT A GENUINE ISSUE OF MATERIAL FACT EXISTS REGARDING WHETHER THE FLSA COMPENSATES THEIR ALLEGED WORK, AND HIDALGO COUNTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

Jimenez asserts that Hidalgo County failed to pay her overtime under the FLSA for pre-

and post-shift work and time spent on-call.  Jimenez does not present enough evidence for the

Court to draw a reasonable inference of the hours for which she claims overtime compensation.

Even if she could show the hours for which she claims compensation, her claims are not

compensable under the FLSA as a matter of law and involve de minimis amounts of time.

A.      **THE PLAINTIFFS DO NOT, AS A MATTER OF LAW, SATISFY THEIR BURDEN OF PROVING UNPAID OVERTIME WORK.**

In an FLSA action for unpaid overtime wages, the plaintiff-employee generally bears the

burden of proof to establish, by a preponderance of the evidence, the number of hours of

overtime worked each week and the wages due per pay period.  Anderson v. Mt. Clemens

Pottery Co., 328 U.S. at 686-87; Wirtz v. Lieb, 366 F.2d 412, 414 (10th Cir. 1966)(Murrah, J.);

Mitchell v. Caldwell, 249 F.2d 10, 11 (10th Cir. 1957)(Bratton, J.); Doty v. Elias, 733 F.2d 720,

725 (10th Cir. 1984); Brubach v. City of Albuquerque, 893 F. Supp. 2d 1216, 1224 (D.N.M.

Sept. 27, 2012)(Vazquez, J.); Garcia v. Tyson Foods, Inc., 890 F. Supp. 2d 1273, 1284 (D. Kan.

2012)(Marten, J.).  When an employer's payroll records are unreliable, an employee can meet his

burden of proof by (i) showing that he "in fact performed work for which he was improperly

compensated," and (ii) producing "sufficient evidence to show the amount and extent of that

work as a matter of just and reasonable inference."  Baker v. Barnard Const. Co., Inc., 146 F.3d

1214, 1220 (10th Cir. 1998)(McKay, J.)(citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. at

686-88).   See Brubach v. City of Albuquerque, 893 F. Supp. 2d at 1224 (citing Sedano v. Mercado, 1992 WL 454007, at *3 (D.N.M. Oct. 8, 1992)(Bratton, J.)).

Jimenez argues that she could not provide evidence of her overtime, because she claims that Hidalgo County had an "unwritten policy of requiring dispatch operators to list only their scheduled hours."   Response at 12 (emphasis added).   Hidalgo County's Personnel Policy, however, expressly directs employees to report "all time worked and . . . all overtime worked." Hidalgo County Personnel Policy 32.   It was Jimenez' responsibility to correctly report her hours.   See Response ¶ 40, at 5; Jimenez Depo. at 73:14-16 (Jimenez, Padilla).   Jimenez does not show that Hidalgo County misreported records or encouraged employees to do so.   She did not report her overtime because "[t]hat was the impression that we got when we got hired."   Jimenez Depo. at 37:13-14 (Jimenez).   See Response ¶ 15, at 2.   Hidalgo County never gave her anything stating that she would not be paid overtime.   See Response ¶ 16, at 2.   Jimenez points to one exchange where her supervisor, Dispatch Director Priscilla Maxwell, told Jimenez that her overtime work would not be approved.   See Jimenez Depo. at 39:5-10 (Jimenez).   Jimenez identifies no other instances where Hidalgo County did not accept overtime claims or where Hidalgo County discouraged her from accurately reporting her time.   Nonetheless, even if Hidalgo County's records were unreliable, Jimenez fails to present "sufficient evidence to show the amount and extent of [uncompensated] work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687.

To satisfy Jimenez' burden of proof, she need not establish the number of overtime hours worked with concrete certainty, but she must present sufficient evidence to create a "just and reasonable inference" that she worked the time claimed.   Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 686-87.   See Metzler v. IBP, Inc., 127 F.3d 959, 965 (10th Cir. 1997).   At a

- 29 -

minimum, an FLSA complaint must set forth the approximate number of unpaid regular and overtime hours allegedly worked.  See Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 89 (2d Cir. 2013).  For example, in Mitchell v. Caldwell, the plaintiff kept "a daily record of hours worked" until he stopped working for his employer.  249 F.2d at 11-12.  "[I]t furnished a basis for ascertaining by mathematical calculation the average amount of overtime worked per week."  249 F.2d at 12.  Similarly, in Bowe v. SMC Electric Products, Inc., 916 F. Supp. 1066, 1072-73 (D. Colo. 1996)(Kane, J.), the plaintiff employee kept records on a calendar and a day timer.  The district court found these records sufficient to allow the court to draw a just and reasonable inference of the overtime hours that the plaintiff worked.  See 916 F. Supp. at 1073.

In contrast, in Courtright v. Board of County Commissioners of Payne County, Oklahoma, 2011 WL 2181954 (W.D. Okla. June 3, 2011)(DeGiusti, J.), the court concluded that the employees' testimony alone did not set forth sufficient evidence to support their claims.  See 2011 WL 2181954, at *10.  The first plaintiff testified that he worked five unscheduled hours per period and that he attended unscheduled trainings.  See 2011 WL 2181954, at *10.  The second plaintiff, also relying on testimony alone, asserted that she "generally worked a double shift every two months and was required to stay past a scheduled shift for a few additional hours twice a month." 2011 WL 2181954, at *10.  The trial court found that their testimony, without other facts or evidence, was insufficient to "support a reasonable finding that [they] worked overtime hours."  2011 WL 2181954, at *10.  See Brown v. ScriptPro, LLC, 700 F.3d 1222, 1230 (10th Cir. 2012)(Kelly, J.)(finding that, even though the plaintiff employee demonstrated he worked overtime, he failed to show the amount of overtime by just and reasonable inference).

The evidence Jimenez offered does not, as a matter of law, allow the court to draw a just and reasonable inference of the hours worked.  First, Jimenez brings no documentation

- 30 -

establishing the amount of overtime she allegedly performed.  See Response ¶ 32, at 4; id. at 11; Jimenez Depo. at 54:7-24 (Jimenez, Padilla).  Second, her testimony alone is insufficient, in this case, to create a just and reasonable inference of the amount of time worked.  In cases where the courts have relied on a plaintiff's testimony to establish the time worked, the plaintiff has been able to establish a consistent pattern of overtime work from which the court could infer the number of hours.  The plaintiffs in these cases have also proffered other evidence to support their testimony.  See Riley v. Town of Basin, 961 F.2d 220, 1992 WL 86717, at *5 (10th Cir. 1992)(Moore, J.)(finding that an employee's time sheets and diary notations reflecting his overtime hours, in addition to his testimony, supported a just and reasonable inference of the time worked).

For example, in Garcia v. Tyson Foods, Inc., the plaintiffs introduced a highly detailed "time study," in which six professional videographers measured the amount of time that employees spent performing tasks for which they claimed overtime compensation over the course of three days.  See 890 F. Supp. 2d at 1284-85.  The court noted that, "[w]hile the testimony of the five plaintiffs alone likely would not have been sufficient to sustain the jury's verdict, when coupled with the evidence of the time study . . . and the damages figures calculated" by a professional, the evidence was sufficient to show the amount of overtime the plaintiffs worked.  890 F. Supp. 2d at 1285. Here, Jimenez' testimony: (i) provides little sense of how many hours of uncompensated work she performed; (ii) does not establish a consistent pattern of overtime from which the court could infer her overtime hours; and (iii) has changed throughout the litigation.

First, Jimenez' testimony is too vague to allow the Court to infer her overtime hours. Specifically, at one point she conceded that she had no sense how much uncompensated time she

worked.  See MSJ ¶ 41, at 7; Jimenez Depo. at 91:10-12 (Jimenez, Padilla).  She further admitted that she had no sense for the period of time for which she seeks compensation.  See MSJ ¶ 41; Jimenez Depo. at 91:10-12 (Jimenez, Padilla).  Jimenez asserted she worked two and a half hours over her shift without compensation every shift she worked "in the very, very beginning."  See MSJ ¶ 24, at 5; Response ¶ 24, at 3; Jimenez Depo. at 40:5-6.  She provides no indication how long she allegedly worked this much time.  See Response ¶ 26, at 3.  When asked how long she performed this overtime work, she responded: "Oh gosh, I don't even remember.  I don't remember what years.  I just know it was more towards the beginning."  Jimenez Depo. at 41:7-9 (Jimenez).  Jimenez does not dispute the evidence that she could not recall how long she worked under those conditions.  See Response ¶ 26, at 3.  In the later years, she recalled working 1.5 to two hours overtime per week.  See MSJ ¶ 30, at 5; Response ¶ 30, at 4; Jimenez Depo. at 58:23-59:4 (Jimenez).  Again, however, she did not indicate how long this overtime occurred.  Similarly, she could not approximate the total number of hours she worked overtime.  See MSJ ¶ 41, at 7.  When asked how many overtime hours she worked, she responded: "It seemed like forever.  But I don't remember how long it was.  I honestly don't remember."  Jimenez Depo. at 41:17-19 (Jimenez).

As to the inconsistent pattern, the amount of overtime Jimenez worked varied based on her shift.  In addition, it varied over the years.  In other words, it was inconsistent; the Court cannot soundly infer a pattern from this evidence.  She "estimated her overtime burden as approximately 1.5 to 2 hours of overtime work per week in recent years, depending on the shift she was working."   Response at 11 (citing Jimenez Depo. at 58:23-59:4, 126:8-15).  Additionally, only some of Jimenez' colleagues stayed beyond their shift to complete work, but she did not know how many.  See Response ¶ 10, at 8.  Moreover, she and her colleagues did not

consistently stay late to complete work.  "It just varied on their day, I guess."  Response ¶ 10, at 8; Jimenez Depo. at 47:23-25.  Based on this testimony, the Court cannot draw a just and reasonable inference of the amount of alleged overtime she or her colleagues worked.

Additionally, Jimenez' testimony is inconsistent regarding her overtime hours.  Initially, she stated that she could not recall ever working beyond her scheduled shift from 2011 through 2013.  See MSJ ¶¶ 27-29, at 5; Jimenez Depo. at 59:1-11 (Jimenez, Padilla)(Padilla: "[W]as there ever a time in 2013 when you were required to stay because you were backlogged?"  Jimenez: "I don't remember, but I don't think so.").  Later, she changed her testimony, asserting that, from 2011 to 2013, she regularly stayed an hour-and-a-half to two hours beyond her shift.  See MSJ ¶ 30, at 5; Response ¶ 30, at 4; Jimenez Depo. at 126:11-15; id. at 130:8-19 (explaining that Jimenez changed her testimony after she "said a little prayer to help [her] remember" and "open[] up [her] memory").  Jimenez' vague and conflicting recollections are insufficient to allow the Court to infer the number of alleged overtime hours that Jimenez performed.

## B.   HIDALGO COUNTY HAD ACTUAL OR CONSTRUCTIVE KNOWLEDGE THAT JIMENEZ PERFORMED OVERTIME WORK.

Hidalgo County further argues that it is entitled to summary judgment because Jimenez cannot prove that Hidalgo County employers knew that she was allegedly working overtime.  See MSJ at 14. Where an employer has no knowledge that its employees are working uncompensated overtime, courts may dismiss an FLSA claim on summary judgment.  See Brown v. ScriptPro LLC, 700 F.3d at 1230-32.  The question on summary judgment, however, is not whether the plaintiff will ultimately prevail on his claim.  Instead, the plaintiff must present enough evidence to support an inference that the defendant had actual or constructive knowledge that its employees performed uncompensated overtime work.  See Whitaker v. Pacific Enter. Oil

Co., 956 F.2d 1170, *2 (10th Cir. 1992)(unpublished).  Hidalgo County asserts that it had no

actual or constructive knowledge of Jimenez' alleged overtime because it was Jimenez' duty to

report accurate time information.  See MSJ at 15.  The Plaintiffs present evidence to the contrary.

They argue that Hidalgo County was aware that employees were performing the pre- and post-

shift work, because the Dispatch Center policies required it.  See Response ¶ 2, at 6; id. at 13.

Moreover, Director Priscilla Maxwell admitted that she was aware of the Dispatch Center's

policy requiring dispatchers to arrive early.  See Response at 13.

Language in policies and procedures that require employees to work certain times may

allow a reasonable jury to find that an employer knew its employees performed uncompensated

work.  See Brubach v. City of Albuquerque, 893 F. Supp. 2d at 1227 (finding that, because the

employer knew of its policy requiring officers to arrive five minutes early and the employer

disciplined them for failing to arrive early, a reasonable jury could "conclude that Defendant had

constructive notice that security officers may have been arriving early").  Here, Hidalgo

County's policies instructed employees to arrive early.  Accordingly, the Plaintiffs have

submitted enough evidence to show that Hidalgo County could have known that its employees

performed uncompensated pre- and post-shift work.

### C.   JIMENEZ' PRE-SHIFT ACTIVITIES ARE NON-COMPENSABLE UNDER THE FLSA.

Jimenez asserts that Hidalgo County required her to arrive at work early and stay late to

perform certain tasks.  See Complaint ¶¶ 23-27, at 4-5.  Supreme Court precedent establishes that

certain pre- and post-shift work may be compensable under the FLSA when it is "integral and

indispensable" to the employee's principal activities.  Jimenez does not present sufficient

evidence to show that her pre- and post-shift work is integral and indispensable to her principal

activities. Accordingly, had the Court been able to draw a reasonable inference of the number of hours she allegedly worked, this work is nonetheless non-compensable under the FLSA on the undisputed facts. Hidalgo County is entitled to judgment as a matter of law.

Before beginning her principal work, Jimenez must: (i) retrieve a headset and notebook; (ii) sign in to radio logs and log into the computer system; (iii) review the briefing board and desk logs, and check incoming files; and (iv) conduct a verbal briefing with the outgoing Dispatch employee. See Response at 10. After the end of her shift, she must file logs, log off the computer systems, clean her work station, and conduct a briefing with the incoming dispatcher. See Response at 11. This pre- and post-shift work is compensable as a principal activity only if (i) Jimenez is "employed to perform" the work; and (ii) the work is integral and indispensable to the principal activity. See Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 519.

Hidalgo County employed Jimenez to receive 911 calls and log them into the system. Donning a headset, logging into the computer, and cleaning her workstation are merely preliminary or postliminary to "the productive work that the employee is *employed to perform*." Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 519 (emphasis in original). These activities do not constitute "the actual 'work of consequence performed for an employer,'" and are more like "the ingress and egress process." Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 520 (quoting 29 C.F.R. § 790.8(a)). First, Hidalgo County does not employ Jimenez to clean her workstation. See Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 519. Cleaning her workstation does not enable Jimenez to perform her job. See Reich v. New York City Transit Auth., 45 F.3d 646, 651 (2d Cir. 1995)(Leval, J.)(observing that the Portal-to-Portal Act amendments exempt such "trivial, non-onerous aspects of preliminary preparation, maintenance

and cleanup" from "work time" under the FLSA).  That Hidalgo County requires the work or that the work benefits Hidalgo County is not dispositive.  Dinkel v. MedStar Health Inc., 2015 WL 1735078, at *3 at *3 (D.D.C. 2015)(Kollar-Kotelly, J.).  Cleaning her workstation is not integral and indispensable to Jimenez' job performance, and cannot provide the basis for an FLSA overtime claim.

Second, Jimenez could not perform her job without a headset.  See Jimenez Depo. at 118:11-12 (Jimenez, Padilla).  She also had to log into the computer system to receive calls and search the NCIC database.  See Jimenez Depo. at 118:19-21 (Jimenez, Padilla).  Although Jimenez had to perform these preliminary tasks, the Tenth Circuit has held that pre- and post-shift activities that can be accomplished with minimal effort and time are non-compensable.  See Smith v. Aztec Well Servicing Co., 462 F.3d at 1289 (holding that preliminary activities that employees can perform quickly and require little concentration are simply a prerequisite for the job -- not integral and indispensable to their principal activities); Gorman v. Consol. Edison Corp., 488 F.3d 586, 594-595 (2d Cir. 2007)(finding that the donning and doffing of helmets, safety glasses, and steel-toed boots were "relatively effortless," non-compensable, preliminary tasks that were not integral to employees' principal activities); Albrecht v. Wackenhut Corp., 379 F. App'x 65, 67 (2d Cir. 2010)(finding that the donning and doffing of uniforms and equipment was non-compensable as a preliminary or postliminary activity).  Because Jimenez could put on her headset and log into the computer system with minimal effort and concentration, and it was not part of the productive work she was employed to perform, these tasks are non-compensable as a matter of law.

- 36 -

That Hidalgo County requires any of this pre-shift work does not by itself make it compensable.[16]  See Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 519 ("If the test could be satisfied merely by the fact that an employer required an activity, it would sweep into 'principal activities' the very activities that the Portal-to-Portal Act was designed to address."). Moreover, that the pre-shift briefings benefit the employer is not dispositive.  See Dinkel v. MedStar Health Inc., 2015 WL 1735078, at *3 (finding that maintaining sanitary work uniforms, as the employer required, did not constitute an integral and indispensable activity, even though "removing infectious pathogens from their uniforms made their jobs safer and more efficient by minimizing the spread of hospital-acquired infections to patients").

Most important, Jimenez' tasks were not integral and indispensable in the way the Supreme Court interprets that term in Integrity Staffing Solutions, Inc. v. Busk.  See 135 S. Ct. at 519 (finding that mandatory post-shift activities like changing clothes and showering were indispensable when working with toxic chemicals, because it would be impossible for employees to do their jobs without performing those post-shift tasks).  An "activity is 'indispensable' to another, principal activity only when an employee could not dispense with it without impairing

---

[16]Jimenez argues that Brubach v. City of Albuquerque, 893 F. Supp. at 1224, requires the Court to find her pre-shift work compensable.  In Brubach v. City of Albuquerque, the City of Albuquerque required employees to attend briefing sessions before work.  The Honorable Martha Vazquez, United States District Judge, concluded that because these briefings were mandatory, they were integral and indispensable, and compensable.  See 893 F. Supp. at 1229. Judge Vazquez decided Brubach v. City of Albuquerque before the Supreme Court's recent decision in Integrity Staffing Solutions, Inc. v. Busk, which altered the analysis for determining whether certain tasks are compensable.  Before Integrity Staffing Solutions, Inc. v. Busk, courts frequently held that when employers required an activity, it was integral and indispensable.  In Integrity Staffing Solutions, Inc. v. Busk, the Supreme Court clarified the meaning of "integral and indispensable."  Importantly, the Supreme Court stated that a required activity is not necessarily compensable.  135 S. Ct. at 519.

his ability to perform the principal activity safely and effectively." <u>Integrity Staffing solutions, Inc. v. Busk</u>, 135 S. Ct. at 520 (Sotomayor, J., concurring).

Jimenez next seeks overtime compensation for the time that she spent transcribing the notes she wrote in her notebook into Hidalgo County's radio logs.  Hidalgo County required Jimenez to record the day's events in the radio logs.  <u>See</u> Jimenez Depo. at 48:19-49:7 (Jimenez, Padilla).   The evidence demonstrates that the activity that required Jimenez to stay late -- transcribing her notes from her personal notebook into the radio logs -- was "optional."  30(b)(6) Deposition of the Board of County Commissioners of Hidalgo County by Priscilla Maxwell at 47:5 (taken August 20, 2014)(Doc. 48-1)("Maxwell Depo.").   Most dispatchers instead record the day's events directly into the radio logs, complete all their work during their shift, and never stay late.  <u>See</u> Response ¶ 10, at 8 (indicating that many dispatchers do not stay late to write in the radio logs); Maxwell Depo. at 47:10-12 (Maxwell, Montalbano); <u>id.</u> at 69:13-18 (Maxwell). Moreover, Jimenez was supposed to complete, and often completed, this task during her workday without working past her scheduled shift.  <u>See</u> Jimenez Depo. at 59:1-11 (Jimenez, Padilla)(stating that Jimenez never stayed late to fill out radio logs in 2013); Hidalgo County Policies and Procedures Manual at 2 ("Outgoing dispatchers are expected to have everything completed at least 30 minutes before the shift is to end."); Answer ¶ 10, at 3 (stating that dispatchers "are required to reconcile call logs at the end of each call," not at the end of their shifts).  Jimenez did not stay late every shift to complete the logs and could have avoided staying late by writing directly in the radio logs rather than transcribing her notes into the logs after her shift.   Accordingly, this post-shift work was not integral and indispensable to her principal activities.  Unlike post-shift activities that are "*always* essential if the worker is to do his job," filling out radio logs "may or may not be necessary in particular situations or for every

employee." IBP, Inc. v. Alvarez, 546 U.S. at 40 (emphasis in original). The Supreme Court has concluded that, when employees need not perform certain pre- or post-shift tasks after every shift, the task is not integral and indispensable. Rather, it "comfortably qualif[ies] as a 'preliminary' activity." IBP, Inc. v. Alvarez, 546 U.S. at 40.

Finally, Jimenez asserts that she had to participate in a pre-shift briefing with the outgoing dispatcher, and a post-shift briefing with the incoming dispatcher, to understand the emergency situation and handle the 911 call. See MSJ ¶ 10, at 3; Jimenez Depo. at 24:17-25:15. Courts have held that mandatory pre-shift briefings can form the basis for FLSA overtime violations. See Brubach v. City of Albuquerque, 893 F. Supp. 2d at 1225. After the Supreme Court's decision in Integrity Staffing Solutions, Inc. v. Busk, however, Jimenez must show more than that the briefings are helpful or required. They must instead be integral and indispensable, meaning that she could not perform her job without them. See Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 518.

The undisputed material facts do not demonstrate that Jimenez could not perform her job without these briefings. Instead of participating in verbal briefings, the incoming dispatchers could instead read the desk logs. See Maxwell Depo. at 57:3-9 (Maxwell, Montalbano). Unlike pre- and post-shift activities that are *always* essential if the worker is to do his job," briefings "may or may not be necessary in particular situations or for every employee." IBP, Inc. v. Alvarez, 546 U.S. at 40. The Hidalgo County Policies and Procedures Manual which the Plaintiffs cite as imposing the rules dispatchers must follow describes the briefings as "a courtesy." Hidalgo County Policies and Procedures Manual at 2 ("[Arriving early] allows the dispatcher to listen to the outgoing dispatcher shift briefing report. This is just considered good work ethics and more so courtesy for your co-workers."). See Response ¶ 2, at 6 (citing the

Hidalgo County Policies and Procedures Manual as providing the basis for arriving early); Response ¶¶ 1-2, at 6 (citing Maxwell Depo. at 39:13-19 (stating that dispatchers are expected to arrive early "as a courtesy" to the shift operator they're relieving, not to better prepare them for their shift)).

"Plaintiffs have not offered any evidence that the . . . pre-shift . . . meetings are necessary" for them to perform their principal job duties. Bonds v. GMS Mine Repair & Maintenance, Inc., 2015 WL 5602607, at *10 (W.D. Penn. 2015)(finding that a mining company's fifteen-minute pre-shift safety meetings were not integral and indispensable to their mining activities, even though the meetings made their jobs safer). The Supreme Court recently reaffirmed its statement that, if the employee need not perform the task before every shift or the task can be eliminated altogether, it is not integral and indispensable. See Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 513 (concluding that an activity was not integral and indispensable when the employees did not participate in them every day); id. at 518 (stating that activities were not integral and indispensable if the employer could have eliminated the required practice without impairing the employees' ability to complete their work). That Hidalgo County benefitted from its employees' briefings does not change the analysis. See Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. at 519; Jones v. Hoffberger Moving Servs. LLC, 2015 WL 1321469, at *5.

The Court recognizes the importance that verbal briefings play in helping emergency dispatchers handle emergency calls. Although the evidence indicates that dispatchers can perform their jobs safely without engaging in pre-shift briefings, the Court acknowledges that the briefings significantly contribute to efficiency. They likely also contribute to safety by helping the incoming dispatcher better step into an emergency situation. The Court thinks efficiency and

- 40 -

safety are important considerations in determining whether an activity is integral and indispensable.  Integrity Staffing Solutions, Inc. v. Busk's majority opinion never mentions efficiency, nor does it suggest that safety is a key indicator whether an activity is integral and indispensable.  In her concurrence explaining her understanding of the Supreme Court's decision, Justice Sotomayor suggested that, when a preliminary activity makes the principal activity safer or more efficient, it is more likely integral and indispensable.  See 135 S. Ct. at 520 (Sotomayor, J., concurring)(explaining that "an activity is 'indispensable' to another, principal activity only when an employee could not dispense with it without impairing his ability to perform the principal activity safely and effectively").  Had Jimenez introduced evidence showing that these pre-shift briefings significantly improved the safety and effectiveness of the dispatchers' jobs, the Court would be more inclined to find the briefings integral and indispensable.  Jimenez argues only that the briefings were required.  See Response at 11.  The Supreme Court has already held that requisiteness is not the touchstone of compensability.

    That Jimenez could perform her principal activities without performing the other pre- and post-shift work demonstrates that the work is not integral and indispensable.  See Dinkel v. MedStar Health Inc., 2015 WL 1735078, at *5 ("Plaintiffs argue that their uniform maintenance activities were important to the hospital's infection control policy, but they do not argue and they cannot show that their jobs would be so unsafe as to be effectively impossible to carry out their jobs without their uniform maintenance activities.").  Because the undisputed facts demonstrate that Jimenez can perform her principal activity without briefings or staying late to fill out radio logs, this pre- and post-shift work is not integral and indispensable to her principal activities.  It is therefore not compensable under the FLSA.  Similarly, as Jimenez can easily don a headset and log into the computer system, these tasks are not part of the productive work she is paid to

perform.  Because the work is not integral and indispensable to Jimenez' principal activities, the Court concludes they are not compensable.

### D.    THE PLAINTIFFS' OVERTIME IS NON-COMPENSABLE, BECAUSE IT IS DE MINIMIS.

Even if Jimenez could produce evidence of the number of hours she worked, the work was de minimis and therefore not compensable.  The de minimis rule acknowledges that, when employees work only minutes beyond their scheduled working hours, the employer may disregard "such trifles" and compute an employee's workweek "in light of the realities of the industrial world." Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 692.  The question whether the de minimis exception applies is separate and distinct from whether the FLSA covers the activity.  See Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 692; Reich v. Monfort, Inc., 144 F.3d 1329, 1333 (10th Cir. 1998); 29 C.F.R. § 785.47.  Thus, even if Jimenez' pre- and post-shift work was integral and indispensable to her principal activities, it can nonetheless be non-compensable as de minimis.

The Plaintiffs cite Brubach v. City of Albuquerque as standing for the proposition that, when an employer requires pre-shift briefings, they constitute part of an employee's "fixed or regular working time," and are "not subject to the de minimis exception."  893 F. Supp. 2d at 1235.  Brubach v. City of Albuquerque, however, hinged on the determination that if an employer requires an employee to work certain hours, those hours constitute compensable "work."  893 F. Supp. 2d at 1230-31.  As explained above, the Supreme Court rejected this reasoning two years later in Integrity Staffing Solutions, Inc. v. Busk.  That the employer requires pre-shift work does not make it compensable "work" under the FLSA; that the work is compensable does not preclude it from being de minimis.  See Anderson v. Mt. Clemens Pottery

Co., 328 U.S. at 692; Reich v. Monfort, Inc., 144 F.3d 1329, 1333 (10th Cir. 1998); Singh v. City of New York, 524 F.3d 361, 370 (2d Cir. 2008)(finding that the de minimis doctrine permits employers to disregard otherwise compensable work "[w]hen the matter in issue concerns only a few seconds or minutes of work"); Reich v. New York City Transit Auth., 45 F.3d 646, 652-53 (2d Cir. 1995)(describing the policy to disregard otherwise compensable activities that involve minimal time and effort).  Consequently, that an employer requires pre-shift briefings does not make them part of an employee's fixed or regular working time, and they may be de minimis.

The Tenth Circuit applies the test that the Ninth Circuit adopted in Lindow v. United States to determine whether pre- or post-shift tasks are de minimis.  See Reich v. Monfort, Inc., 144 F.3d at 1333.  Courts consider: (i) the practical administrative difficulty of recording the additional time; (ii) the aggregate amount of compensable time; and (iii) the regularity of the additional work.  See Lindow v. United States, 738 F.2d at 1063.  For example, in Lindow v. United States, the amount of time employees spent performing pre-shift work varied.  See 738 F.2d at 1063-64.  The Ninth Circuit held that, even though the plaintiffs' aggregate overtime was substantial, the claim was "de minimis because of the administrative difficulty in recording the time and the irregularity of the additional pre-shift work."  738 F.2d at 1064.

Concerning the administrative difficulty here, the undisputed facts demonstrate that employees took varying amounts of time to perform their pre- and post-shift work.  Some employees never stayed late to finish transcribing their radio logs, while Jimenez asserts that she did.  See Response ¶ 10, at 8; id. at 8.  Some pre-shift briefings took very little time, while others took more time, depending on whether an emergency was occurring.  See MSJ ¶ 11, at 3; Response ¶ 11, at 2; Maxwell Depo. at 57:3-9 (Maxwell, Montalbano).  Moreover, these briefings occurred between two dispatch employees -- not between one supervisor and multiple

employees.  Thus, no supervisor could measure the exact amount of time each briefing took without participating in every one-on-one conversation.  The "practical difficulty of supervising and recording the additional time weighs in favor of finding it noncompensable."  Reich v. Monfort, Inc., 144 F.3d at 1334.  It would be administratively difficult to monitor and record the precise amount of time each particular briefing took and how long, if at all, each individual employee spent transcribing the day's events into the radio logs.  See Perez v. Wells Fargo and Co., 2015 WL 1887354, at *7 (N.D. Cal. 2015)(finding that it would be unduly burdensome for the employer to have to determine what small amount of time is compensable or not).

As to the amount of time, Jimenez admits that she can complete her pre-shift work in "[m]aybe five, ten minutes."  Jimenez Depo. at 118:24.  See MSJ ¶ 9, at 3; Response ¶ 9, at 2.  Moreover, Jimenez can perform some of this work during her shift.  The Tenth Circuit has never adopted a bright-line rule to determine what work is de minimis.  See Reich v. Monfort, Inc., 144 F.3d at 1333.  Nevertheless, "[m]ost courts have found daily periods of approximately 10 minutes de minimis even though otherwise compensable."  Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 692.  See Green v. Planters Nut & Chocolate Co., 177 F.2d 187, 188 (4th Cir. 1949)(per curiam)(finding it "obvious" that ten minutes is de minimis); Carter v. Panama Canal Co., 314 F. Supp. 386, 392 (D.D.C. 1970)(Corcoran, J.)(finding that overtime between two to fifteen minutes is de minimis).  The short nature of the pre- and post-shift work suggests that the work is de minimis.  See Bartholomew v. City of Burlington, Kan., 5 F. Supp. 2d 1161 (D. Kan. 1998)(Saffels, J.)(finding that a fifteen-minute briefing could fit within the de minimis rule).  As to the times Jimenez alleged she stayed hours after her shift to complete her radio logs, this time exceeds the de minimis rule and is, therefore, not de minimis.

- 44 -

As to the regularity of the work, the briefings consume very little time when the incoming dispatcher takes over at a time when there are no calls.  See Maxwell Depo. at 57:3-9 (Maxwell, Montalbano).  Employees often showed up late, thereby changing the times the briefings occurred.  See MSJ ¶¶ 33-37, at 6; Jimenez Depo. at 55:16-19 (Jimenez).  This irregularity suggests that the briefings involved a de minimis amount of time.  In contrast, Jimenez put on her headset and logged into the computer systems and radio logs every day.  Even though retrieving a headset and signing into radio logs and computer systems occurred regularly, these tasks require little to no concentration.  Jimenez could perform many of her pre-shift tasks simultaneously.  See Jimenez Depo. at 118:3-15 (describing how Jimenez puts on her headset while having a briefing and checking the drawer).  The Tenth Circuit has acknowledged that "the time spent putting on and taking off [required equipment] is *de minimis* as a matter of law." Reich v. IBP, Inc., 38 F.3d at 1126 n.1 (discussing the pre-shift requirements of putting on safety glasses, earplugs, safety shoes, and a hard hat).  There is no genuine issue of material fact in dispute.  Reading the facts in the light most favorable to Jimenez, donning a headset, checking her drawer, signing into radio logs, and conducting briefings are de minimis.  The time she spent completing her radio logs is not de minimis.

### E.   THE PLAINTIFFS' ALLEGED ON-CALL WORK IS NON-COMPENSABLE.

Time spent on call may be "working time" within the FLSA's compensation provisions if the time is spent "predominantly for the employer's benefit."  Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944).  See Armitage v. City of Emporia, Kan., 982 F.2d 430, 432 (10th Cir. 1992).  United States Department of Labor regulations distinguish between "on-duty" and "off-duty" on-call time.  "On-duty" on-call time occurs when "the employee is engaged to wait." 29

C.F.R. § 785.15.  "Off-duty" on-call time involves time periods when "which are long enough to enable him to use the time effectively for his own purposes."  29 C.F.R. § 785.16.  Where on-call employees are "not confined to their homes or to any particular place, but may come and go as they please, provided that they leave word where they may be reached, the hours spent 'on call' are not considered as hours worked."   29 C.F.R. § 778.223.   Accordingly, on-call time is compensable only if employees cannot pursue personal activities because on-call restrictions limit their ability to pursue personal activities.  See Norton v. Worthen Van Serv., Inc., 839 F.2d 653, 655 (10th Cir. 1988).

To be compensable, the restriction must be "so burdensome as to render it time predominantly spent for the benefit of the employer."  Gilligan v. City of Emporia, 986 F.2d 410, 412 (10th Cir. 1993).  Courts consider various factors in determining whether the restriction meets this test: (i) the frequency of calls, (ii) the response time required; (iii) the amount of time spent responding to calls; (iv) the geographical restrictions on the employee; (v) and, most importantly, the degree to which the employee could engage in personal activity.  See Norton v. Worthen Van Serv., Inc., 839 F.2d at 654-55.  Prohibitions on drinking alcohol and geographic restrictions are not enough alone to make the on-call time compensable.  See Armitage v. City of Emporia, Kan., 982 F.2d at 432 (finding that the plaintiffs' on-call time was not compensable, even though they had to remain sober and be able to report for duty within twenty minutes).

For example, in Sarmiento v. City and Cnty. of Denver, 82 F.3d 426 (10th Cir. 1996)(unpublished), the Tenth Circuit found the plaintiff's on-call time to be non-compensable, even though he "felt constrained in what he did and his activities were interrupted by call-backs" that occurred almost on a nightly basis.  82 F.3d at *2, *5.  He was told to stay within a certain area so that he could not participate in all activities he would have enjoyed.  Moreover, the

- 46 -

employer required him to respond "as soon as possible," and to work "anywhere from 15 minutes to 2-3 hours and sometimes longer." 82 F.3d 426, at *5. Despite these restrictions, the Tenth Circuit held that these "restrictions . . . do not show that he was 'engaged to wait,' but rather that he 'waited to be engaged.'" 82 F.3d 426, at *2. Accordingly, his time was not compensable as a matter of law.

The issue how Jimenez spends her on-call time is a question of fact that cannot be resolved on summary judgment. See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986). On the other hand, whether Jimenez' undisputed activities are compensable as on-call time under the FLSA is a question of law, "which can properly be resolved on summary judgment." Renfro v. City of Emporia, 948 F.2d 1529, 1536 (10th Cir. 1991)(granting summary judgment by relying on undisputed facts). See Berry v. Cnty. of Sonoma, 30 F.3d 1174, 1180 (9th Cir. 1994)(finding whether "limitations on the employees' personal activities while on-call are such that on-call waiting time would be considered compensable overtime under the FLSA is a question of law . . . ."); Sarmiento v. City and Cnty. of Denver, 82 F.3d 426, at *2. Here, the facts are undisputed.

First, Jimenez introduces little, if any, evidence that she was "on call." Hidalgo County did not require her to answer phone calls or come to the office when Maxwell left town. See Maxwell Depo. at 96:21-22 (Maxwell). Maxwell stated that, if Jimenez answered calls, it was "out of courtesy" to her fellow co-workers. Hidalgo County put few, if any, restrictions on Jimenez during the four times she was allegedly on call. The only evidence of a restriction that the Plaintiffs raise is that, if Director Maxwell had to leave town, she would instruct the dispatchers to call Jimenez or another dispatcher with any questions if they could not reach her. See Response at 18; Jimenez Depo. at 112:10-113:13 (Jimenez, Padilla). Jimenez could recall

- 47 -

only four instances of being on call.  See MSJ ¶ 39, at 7; Jimenez Depo. at 112:21-22 (Jimenez).

For two of the four times, she did not need to leave her house to respond to the calls.  See

Jimenez Depo. at 113:3.  Hidalgo County did not require Jimenez to remain on the premises or

even in the immediate vicinity.  Jimenez could therefore participate in various personal activities.

Moreover, her on-call responses did not consume hours of time.  Taking the undisputed facts,

Jimenez' alleged on-call time does not constitute compensable time under the FLSA as a matter

of law.  See Gilligan v. City of Emporia, 986 F.2d at 411 (dismissing the plaintiffs' on-call time

claims on summary judgment even though the employers required the plaintiff employees to

respond to calls within one hour, prohibited alcohol consumption, and required employees to

stay within pager range, which limited their activities).

## II.     THE PLAINTIFFS CANNOT PURSUE THEIR STATE LAW CLAIMS IN FEDERAL COURT.

Hidalgo County also moves for summary judgment on all of Jimenez' state law claims.

The Court dismisses Jimenez' federal claims and declines to exercise supplemental jurisdiction

over her state law claims.[17]  It therefore dismisses Jimenez' state law claims without prejudice.

Although the Court does not rule on Jimenez' state law claims, because it spent so much time

analyzing them when it wrote the MOO granting conditional certification, the Court gives the

---

[17]Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  The Tenth Circuit reviews a district court's decision not to exercise jurisdiction for abuse of discretion.  See Nielander v. Bd. Of Cnty. Comm'rs, 582 F.3d 1155, 1172 (10th Cir. 2009).  The Tenth Circuit has held: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(Ebel, J.).  See United Mine Workers of Amer. v. Gibbs, 383 U.S. 715, 726 (1966)("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

state court and the parties the benefit of its work.  The Court has already concluded that Jimenez is unlikely to prevail on both her state statutory claim and her breach of contract claim.

A. **THE PLAINTIFFS ARE UNLIKELY TO BE ABLE TO USE NMSA 50-4-2(b) TO PURSUE STRAIGHT TIME CLAIMS, OVERTIME, AND MINIMUM WAGES.**

The Plaintiffs' state law claims are for the same behavior that allegedly constitutes the FLSA violations.  Specifically, Count One alleges a NMMWA claim for unpaid wages in violation of unspecified portions of NMSA §§ 50-4-1–50-4-30.  See Complaint, ¶ 21, at 4.  The NMMWA provides that "[a]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours."  § 50-4-22(D) NMSA.  The NMMWA exempts, however, public employers like Hidalgo County from the overtime and minimum wage provisions.  See §§ 50-4-21(B), (C)(3) NMSA.  See Brubach v. City of Albuquerque, 893 F. Supp. 2d at 1237 (stating that "the overtime provisions in the New Mexico statute do not apply to public employers such as the City").  After conceding this point, see Response at 18, the Plaintiffs for the first time specifically allege violations of § 50-4-2(b) to support Count One.  See Response to MSJ at 18.

Section 50-4-2(b), however, governs the timely payment of wages.  See, e.g., Rainaldi v. City of Albuquerque, 2014-NMCA-112, ¶ 19, 338 P.3d 94, 96 (Hanisee, J.)(referring to § 50-4-2 as a "statutorily mandated compensation schedule").  In Rainaldi v. City of Albuquerque, the Court of Appeals of New Mexico found that § 50-4-2 imposes two distinct wage payment requirements:

> (1) that employers "shall designate regular pay days, not more that sixteen days apart, as days fixed for the payment of wages to all employees paid in [the] state[,]" and (2) that employers "shall pay for services rendered from the first to

> the fifteenth days . . . by the twenty-fifth day of the month during which services
> are rendered, and for all services rendered from the sixteenth to the last day of the
> month . . . by the tenth day of the succeeding month."

2014-NMCA-112, ¶ 6.  The Court of Appeals of New Mexico stated that this provision requires

the employer to "pay its employees within ten days of the end of a particular pay period" for a

"service rendered by the employee, <u>determined by the City to be compensable</u>."  <u>Rainaldi v. City

of Albuquerque</u>, 2014-NMCA-112, ¶ 22 (emphasis added).

Notably, § 50-4-2 does not provide a cause of action to sue for wages of disputed

compensability.  "When a state wage-payment law applies, it requires timely payment of

<u>undisputed</u> wages. . . .  [T]he wage-payment law may not apply because . . . the payments sought

are not 'wages' covered by the law."  RESTATEMENT OF EMPLOYMENT LAW § 3.01 (Proposed

Final Draft 2014)(referencing § 50-4-2 when stating that laws governing timely payment of

wages "regulate the timing of payment of wages and often require payment of the <u>undisputed

part</u> of wages.")(emphasis added).  In fact, there is no case law authorizing a private cause of

action under § 50-4-2(b) for wages of disputed compensability.  New Mexico labor statutes

provide mechanisms to sue for wages in dispute, unpaid overtime, and minimum wages.

Specifically, § 50-4-26(C) provides that employers "shall be liable to employees affected in the

amount of their unpaid or underpaid minimum wages."  N.M. Stat. Ann. § 50-4-26(C).  Then, §

50-4-26(D) provides a cause of action to recover those unpaid wages:

> An action to recover such liability may be maintained . . . by any one or more
> employees for and on behalf of the employee or employees and for other
> employees similarly situated, or such employee or employees may designate an
> agent or representative to maintain such action on behalf of all employees
> similarly situated.

Section 50-4-26(D) NMSA.  As stated above, however, the NMMWA exempts public employers

like Hidalgo County from these provisions.  <u>See</u> N.M. Stat. Ann. §§ 50-4-21(B), (C)(3).

Second, § 50-4-7 provides a specific procedure for recovering wages in dispute from public employers.  See N.M. Stat. Ann. § 50-4-7.  Finally, § 50-4-17 subjects public employers to fines and penalties for failing to comply with New Mexico's wage and hour provisions.  That the state wage and hour laws provide these mechanisms demonstrates that the New Mexico Legislature likely did not intend to provide a private cause of action to recover wages in § 50-4-2(b).  To use § 50-4-2, which requires employers to pay employees on designated semimonthly or monthly pay days, to sue a public employer for wages of disputed compensability would circumvent the NMMWA's remedial scheme.  Because the Plaintiffs likely cannot maintain a suit for the payment of ordinary wages under New Mexico wage-and-hour laws against Hidalgo County, the claim is likely to fail as a matter of law.

**B.    THE PLAINTIFFS LIKELY CANNOT ASSERT BREACH OF AN IMPLIED CONTRACT WHEN FEDERAL AND STATE LAWS ALREADY REQUIRE THE DEFENDANT TO COMPLY.**

The Plaintiffs' next state law claim, Count Three, asserts a claim for breach of contract. The Plaintiffs allege that Hidalgo County was a party to an implied employment contract which required it to pay for "hours worked and overtime."  Complaint, ¶ 29, at 5.  The Plaintiffs argue that Hidalgo County's policies and handbooks form the basis of this contract.  See Response to MSJ at 19.  While an employee handbook or other policies can form the basis of an implied contract, see Lopez v. American Baler Co., 2014 WL 1285448, *20 (D.N.M. March 27, 2014)(Browning, J.), the Supreme Court of New Mexico has stated that "an agreement to do what one is already legally bound to do is not sufficient consideration for the promise to another."  Salazar v. City of Albuquerque, 2013 WL 5554185, at *46 (citing Bank of Santa Fe v. Biava, 1990-NMSC-023, ¶¶ 2-7).

In Salazar v. City of Albuquerque, the Court held that the plaintiff could not enforce the City Charter as a condition of his employment contract.  The Court recognized that a promise which supports an implied contract could be found in written representations like an employer's policies or handbooks.  See 2013 WL 5554185, at *46.  Nonetheless, "[c]ourts have held that an alleged implied contract that merely restates the law does not create an implied contract."  2013 WL 5554185, at *46 (citing Peralta v. Cendant Corp., 123 F. Supp. 2d 65, 83 (D. Conn. 2000)(Arterton, J.)("The language of the anti-harassment policy that plaintiff urges as the basis of his implied contract claim does not indicate that defendant is undertaking any contractual obligations towards the plaintiff; rather, it obliges the Defendant to comply with federal and state anti-discrimination laws.")).

Promises in Hidalgo County's policies and procedures are general statements of adherence to federal and state laws; thus, "standing alone they do not create a separate and independent contractual obligation." Peralta v. Cendant Corp., 123 F. Supp.2d at 65.  See Byra–Grzegorczyk v. Bristol–Myers Squibb Co., 572 F. Supp. 2d 233, 254 (D. Conn. 2008)(Kravitz, J.)(recognizing that an "anti-discrimination policy" does not indicate that an employer is undertaking any contractual obligations towards the employee; rather, it requires the employer "to comply with federal and state anti-discrimination laws"); Belgrave v. City of N.Y., 1999 WL 692034, *45 (E.D.N.Y. 1999)(Gleeson, J.)(dismissing the plaintiff's breach-of-contract claim where employee alleged that employer failed to follow its procedures for providing equal opportunity to employees); Mutua v. Tex. Roadhouse Mgmt. Corp., 2010 WL 4683859, at *14-15 (D.S.D. Nov. 10, 2010)(Schreier, J.)(granting summary judgment on a breach-of-contract claim seeking to enforce the anti-discrimination provisions in the employer's employee handbook, because the employer already must abide by Title VII and a promise to perform a

- 52 -

legal duty is not consideration for a return promise); <u>Gally v. Columbia Univ.</u>, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998)(Jones, J.)(stating that a provision in the code of conduct requiring that all students receive fair and equal treatment is "merely a general statement of adherence by [the defendant] to existing anti-discrimination laws[;][i]t does not create a separate and independent contractual obligation")(citation omitted).

The Court in <u>Clayton v. Vanguard Car Rental U.S.A., Inc.</u>, 761 F. Supp. 2d 1210 (D.N.M. 2010)(Browning, J.), stated its belief that "the Supreme Court of New Mexico would not vary from this body of law, because the Supreme Court has recognized that 'an agreement to do what one is already legally bound to do is not sufficient consideration for the promise to another.'" 761 F. Supp. 2d at 1280 (citing <u>Bank of Santa Fe v. Biava</u>, 1990-NMSC-023, ¶¶ 2-7). Furthermore, even if Hidalgo County's policies and procedures could constitute an implied contract, the Plaintiffs have not established that those policies created an implied contract. The Plaintiffs allege that Hidalgo County is already obligated to pay its employees for "hours worked and overtime" under the FLSA and New Mexico statutory law. <u>See</u> Complaint ¶ 21, at 4; <u>id.</u> ¶ 24, at 5. Because Hidalgo County already had a duty to pay the Plaintiffs under the FLSA and New Mexico statutory law, representations in the employee handbook or other policies and procedures cannot form the basis of an implied contract. The Court therefore grants the MSJ as to Count Three.

**C.  THE PLAINTIFFS CAN LIKELY PURSUE THEIR UNJUST ENRICHMENT CLAIM.**

The Plaintiffs' final state law claim, Count Four, is for unjust enrichment. They allege that Hidalgo County "failed to pay Plaintiffs and others for all hours worked." Complaint, ¶ 34, at 6. The Plaintiffs have statutory remedies available under the FLSA and New Mexico statutory

law to recover for Hidalgo County's alleged failure to compensate.  The Supreme Court of New Mexico has stated that "[t]he general equity jurisdiction of the trial court is not available . . . because appellee in fact had an adequate remedy at law."  Gen. Tel. Co. of Sw. v. State Tax Comm'n, 1962-NMSC-005, 69 N.M. 403, 408, 367 P.2d 711, 715.  See Sims v. Sims, 1996-NMSC-078, 122 N.M. 618, 624, 930 P.2d 153, 159 (stating that "equity will not act if there is a complete and adequate remedy at law"); Meyer v. Christie, 634 F.3d 1152, 1162 (10th Cir. 2011)(McKay, J.)(prohibiting the plaintiffs from pursuing their unjust enrichment claim unless they elect not to recover damages on their legal claims); Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1117 (10th Cir. 2005)(Murphy, J.)(finding that an equitable claim for unjust enrichment fails when the parties had remedies available at law under their contract); Strom v. Goldman, Sachs & Co., 202 F.3d 138, 144 n.6 (2d Cir. 1999)(Kaplan, J.)(finding that, when there is an adequate remedy at law, a court will not permit a claim in equity); Austin v. N. Am. Forest Products, 656 F.2d 1076, 1088-89 (5th Cir. 1981)(Johnson, J.)(finding that, when an adequate remedy at law is available, "the court may not resort to principles of equity").

New Mexico law disfavors equitable actions when the plaintiffs have legal remedies available.  See Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1116-17 (discussing the preference for legal remedies over unjust enrichment claims); Abraham v. WPX Energy Prod., LLC, 20 F. Supp. 3d 1244, 1271-72 (D.N.M. 2014)(Browning, J.)(finding that the Tenth Circuit's interpretation of New Mexico law, which binds the Court, "expresses a reticence to permit an unjust enrichment claim to proceed when there are contractual remedies").  Whether the Plaintiffs may pursue an equitable remedy when federal and state statutes provide legal remedies is a state law issue.  When the Supreme Court of New Mexico has not yet decided an issue, the Court's task is to predict how the Supreme Court of New Mexico would decide the

issue.  See Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)("Ultimately, however, the Court's task is to predict what the state supreme court would do.")(citations omitted); Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1214 (D.N.M. 2008)(Browning, J.)("The Court's task is to divine, as much as possible, what the Supreme Court of New Mexico would do if the legal question was presented to it.").  The Tenth Circuit's interpretation of New Mexico law constrains the Court's interpretation of New Mexico law.  See Abraham v. WPX Energy Prod., 20 F. Supp. 3d at 1272.

When state and federal labor laws provide a means to recover unpaid compensation, other courts have refused to allow a plaintiff's unjust enrichment claim to proceed.  See Garcia v. Tyson Foods, Inc., 766 F. Supp. 2d 1167, 1188 (D. Kan. 2011)(Lungstrum, J.)(granting summary judgment on unjust enrichment claim as duplicative of wage claims under state law)(citing Clougher v. Home Depot U.S.A., Inc., 696 F. Supp. 2d 285, 295 (E.D.N.Y. 2010)(Mauskopf, J.)(dismissing quantum meruit claims as duplicative of state statutory claim in wage and hour context)); Perry v. Upper Deck Co., 2007 WL 1449797, at *3 (S.D. Cal. May 11, 2007)(Burns, J.)(granting summary judgment on unjust enrichment claim where remedies were available under California Labor Code, Cal. Labor Code §§1-6208 (West 1989 & Supp. 2003)); Bongat v. Fairview Nursing Care Center, Inc., 341 F.Supp.2d 181, 188-89 (E.D.N.Y. 2004)(Feuerstein, J.)(dismissing quantum meruit and unjust enrichment claims in favor of statutory overtime wage law claims).

Other state courts have concluded that the fact that the Plaintiffs may not ultimately prevail under the state and federal labor laws does not make their legal remedies inadequate.  In Scarpinato v. East Hampton Point Management Corp., 2013 WL 5202656 (E.D.N.Y. 2013)(Bianco, J.), the court determined that the FLSA provided plaintiffs with a remedy for their

claims that they had not been paid overtime wages. See 2013 WL 5202656, at *2. The administrative exemption to the overtime rule exempted the employer. The plaintiff's FLSA claim therefore failed. See 2013 WL 5202656, at *2. The court found that the plaintiff's claim for payment of wages under the New York Labor Law failed for the same reason -- again, the law exempted the employer. See 2013 WL 5202656, at *3. Despite that both claims failed, the court dismissed the plaintiff's unjust enrichment claim because the plaintiff had an "adequate remedy at law." 2013 WL 5202656, at *3.

The Court believes New Mexico law would arrive at a different conclusion. In Starko, Inc. v. Presbyterian Health Plan, Inc., 2012-NMCA-053, the Court of Appeals of New Mexico determined that the existence of a statutory remedy did not automatically foreclose an equitable remedy that addresses the same claim unless the statute "provides with express language or necessary implication" that the New Mexico Legislature intended to foreclose traditional equitable remedies. 2012-NMCA-053, ¶ 93 (citing Sims v. Sims, 1996-NMSC-078, ¶ 33), rev'd on other grounds, 2014-NMSC-033. In New Mexico, "[t]here is no requirement that the creation of a statutory remedy at law for a particular type of claim will automatically supplant an equitable remedy that addresses the same claim." Starko, Inc. v. Presbyterian Health Plan, Inc., 2012-NMCA-053, ¶ 93. Similarly, the Court found that, under New Mexico law, if a plaintiff could not pursue his breach-of-contract claim for some reason, the existence of a legal remedy would not automatically bar the unjust enrichment claim. See Abraham v. WPX Energy Prod., 20 F. Supp. 3d at 1276 (citing Danley v. City of Alamogordo, 1978-NMSC-031, 91 N.M. 520, which allowed a plaintiff to pursue an unjust enrichment claim because his contract claim was not viable).

Here, both federal and state statutes govern the parties' relationship regarding the dispute. Both statutes impose requirements on employers regarding payment to employees. The Plaintiffs therefore have statutory remedies available to them for the wage-and-hour violations underlying their unjust enrichment claims. Under New Mexico law, however, the Plaintiffs may pursue equitable remedies unless the statute "provides with express language or necessary implication" that the New Mexico Legislature intended to foreclose traditional equitable remedies. Starko, Inc. v. Presbyterian Health Plan, Inc., 2012-NMCA-053, ¶ 93. Neither the FLSA nor state wage-and-hour laws provide any such indication that they foreclose equitable remedies. Consequently, it is likely that the Plaintiffs may pursue their unjust enrichment claims.

By granting the MSJ on the Plaintiffs' FLSA claims, the Plaintiffs have only state law claims before the Court.[18] The Court declines to exercise supplemental jurisdiction. See Koch v. City of Del City, 660 F.3d at 1248 ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). It therefore dismisses Jimenez' state law claims without prejudice.

**IT IS ORDERED** that the requests in Defendant Board of County Commissioners of the County of Hidalgo's Motion and Memorandum for Summary Judgment on All of Plaintiff

---

[18]The Class Action Fairness Act, 28 U.S.C. §1332 ("CAFA"), gives federal courts jurisdiction over cases where only minimal diversity exists, so long as "the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1348 (2013)(quoting 28 U.S.C. § 1332(d)(2)). See Woods v. Standard Ins. Co., 771 F.3d 1257, 1261 (10th Cir. 2014). The CAFA does not apply to this case, where the parties did not invoke the CAFA, or establish that: (i) the amount in controversy exceeds $5 million, or (ii) the class has more than 100 members.

Martha S. Jimenez's Claims, filed November 12, 2014 (Doc. 40)("MSJ") are granted.  The Court

grants the motion as to Jimenez' federal claim for violations of the Fair Labor Standards Act of

1938, 29 U.S.C. §§ 201-219 -- Count Two -- with prejudice.  It dismisses Jimenez' state law

claims for violations of state statutory laws, breach of contract, and unjust enrichment -- Counts

One, Three, and Four -- without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Shane C. Youtz
James A. Montalbano
Stephen Curtice
Youtz & Valdez, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

Agnes F. Padilla
Felicia C. Boyd
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendant*