IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARTHA JIMENEZ, *et al.*,

    Plaintiffs,

v.                                                 Civ. No. 13-971 GBW/KRS

BOARD OF COUNTY COMMISSIONERS
OF HIDALGO COUNTY,

    Defendant.

## ORDER GRANTING MOTION FOR RECONSIDERATION

THIS MATTER comes before the Court on Plaintiffs' Motion for Reconsideration of Amended Stipulated Judgment. *Doc. 88*. For the reasons that follow, the Court will GRANT the Motion.

### I. BACKGROUND

The parties to this FLSA collective action attended a settlement conference before the undersigned on March 1, 2018, during which they reached a settlement agreement. *Doc. 81*. As recited on the record at the close of the conference, the agreement resolved all claims of the named Plaintiffs and the claims of the similarly situated potential plaintiffs entitled to notice pursuant to 29 U.S.C. § 216(b) in exchange for a payment by Defendant to the class of $19,855, and a payment by Defendant to counsel for attorney's fees and costs of $31,500. *See id.* (cite to recording). The distribution among the class and to the class representatives was left to Plaintiffs' counsel utilizing the information

provided by Defendant based on the 5-minute calculation of underpayment. *Id*. It was further agreed that half of the payment to the class would be subject to tax withholding as a payment of wages, and the remaining half would not as it would represent liquidated damages. *Id*. It was also agreed that all unclaimed settlement amounts would revert to Defendant. Subsequently, counsel agreed to the following distribution of the settlement proceeds:

| | |
|---|---|
| 18 Dispatch Operator Class Members: | $7,098.90 (average recovery of $394.38)[1] |
| 2 Named Plaintiffs: | $13,200 |
| Attorney's Fees: | $20,000 |
| Gross Receipts Tax (7.5%): | $1,500 |
| Costs: | $10,000 |
| **Total:** | **$51,798.90** |

*Doc. 84* at 2.

The parties sought Court approval of the settlement agreement on April 3, 2018. *Doc. 83*. They filed an Amended Joint Motion to Approve Settlement the following day, on April 4, 2018, which the Court granted in part on April 20, 2018. *Docs. 84, 85*. The Motion was denied in part, because the Court amended the parties' Stipulated Judgment to eliminate the bonus payments of $6,600 each to the only remaining named Plaintiffs in this matter, Martha S. Jimenez and Amanda Vogelsang-Wolf. *Doc. 85* at 2. Instead, the Court directed that $20,298.90 (the $7,098.90 designated for the Dispatch Operator Class Members plus the $13,200 designated as bonus payments per the

---

[1] Named Plaintiff Martha S. Jimenez is included in this class. *See doc. 84* at 2 n.2.

agreement) be distributed proportionately to "the 20 class members, based on their work performed, in the amounts shown in [the chart attached as Exhibit B to the parties' Amended Motion]." *Id.* The terms of the settlement agreement were otherwise left intact. *See generally docs. 84, 85*.

Plaintiffs filed the instant Motion for Reconsideration on May 4, 2018.[2] *Doc. 88*. While Plaintiffs assert that the Motion is brought pursuant to both Rules 59 and 60, the Court will treat it as a Rule 59(e) motion because it was filed less than 28 days after the Court's entry of the amended Stipulated Judgment (*doc. 85*) and involves reconsideration of matters properly encompassed in a decision on the merits. *See New Mexico v. Valley Meat Co., LLC,* 2015 WL 9703255 at *9 (D.N.M. Dec. 14, 2015) (citations omitted).

**II. ANALYSIS**

In the Motion, Plaintiffs request relief from the judgment as entered on two separate bases. First, they argue that incentive payments are proper generally and in the specific circumstances of this case. Second, they argue that the Court's amendments to the parties' Stipulated Judgment render the terms of the agreement impracticable. *See doc. 88* at 2. Having conducted a thorough review of the terms at issue, the Court agrees on both points.

**A. The Judgment is Impracticable as Written**

---

[2] Subsequent to the filing of the Motion for Reconsideration, the case was reassigned from the original presiding judge to the undersigned. *See doc. 90.*

The amended Stipulated Judgment entered by the Court orders distribution of the settlement funds among "20 class members." *See doc. 85* at 2. The Court determined the relevant recipients of the settlement funds by adding named Plaintiff Vogelsang-Wolf to the nineteen dispatchers—including named Plaintiff Jimenez—listed on the chart attached as Exhibit B to the parties' Amended Motion to Approve Settlement, which provides damages calculations for putative members of the Dispatch Operator class. *Doc. 84-2; see also doc. 85* at 2. That determination by the Court raises two problems for the parties in executing the judgment. First, Plaintiff Vogelsang-Wolf was formerly the class representative for the Detention Officer class, whose claims were extinguished at the summary judgment stage by this Court and were not revived on appeal to the Tenth Circuit. *See docs. 67, 76-1.* Second, while the Dispatch Operator class successfully appealed this Court's grant of summary judgment to Defendants on their FLSA claims, *see docs. 66, 76-1*, only eighteen of the nineteen dispatchers listed on the chart are members of the certified Dispatch Operator class. The outlier, Villnavia Harmon, did not work during the relevant class certification time period of September 15, 2012 to September 15, 2015, and is therefore not entitled to any portion of the settlement funds. *See doc. 88* at 8; *doc. 84-2*. In addition to the named Plaintiffs, only seventeen potential plaintiffs in the Dispatch Operator class will receive notice that they are eligible to participate in this settlement. *Doc. 84* at 5. In other words, there are only

4

eighteen members of the Dispatch Operator class,[3] and only nineteen total existing and potential Plaintiffs eligible to receive any settlement funds, making the Court's final judgment referring to "20 class members" impossible to execute as written.

Of course, such a minor clerical error could readily be corrected pursuant to Rule 60(a), by amending the judgment to order proportional distribution of the settlement funds amongst the eighteen class members included in the Dispatch Operator class plus Plaintiff Vogelsang-Wolf (rather than among "the 20 class members"). *See* Fed. R. Civ. P. 60(a). However, the Court also agrees that the bargained-for bonus payments to the named Plaintiffs in this case are appropriate under the circumstances and should not have been eliminated from the terms of the agreement. For the reasons that follow, the Court will thus grant relief from the final judgment insofar as it nullified the parties' agreement that class representatives Jimenez and Vogelsang-Wolf receive bonus payments of $6,600 each.[4]

**B. Bonus Payments are Appropriate in the Present Circumstances**

Courts regularly approve bonus payments (also called "incentive awards") to compensate named plaintiffs for the disproportionate time and effort they contribute in a class or collective action compared to the contributions of other class members.

---

[3] While none of these eighteen dispatchers, other than Plaintiff Jimenez, is currently involved in the case, they are all putative members of the certified Dispatch Operator class and thus properly included in the settlement agreement as potential plaintiffs.

[4] Per the terms of the settlement agreement, in addition to her bonus payment of $6,600, Plaintiff Jimenez is also entitled to a portion of the $7,098.90 slated to be disbursed to the eighteen members of the Dispatch Operator class. *See doc. 84* at 2.

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). "The award should be proportional to the contribution of the plaintiff." *Id.*

Here, in eliminating the parties' agreed-upon incentive awards to the named Plaintiffs in this case, the presiding judge relied upon his earlier opinions where similar awards were disapproved. *See doc. 85* at 2 (citing *Robles v. Brake Masters Sys., Inc.*, Civ. No. 10-0135 JB/WPL, 2011 WL 9717448, at *12-*17 (D.N.M. Jan. 31, 2011); and *Lowery v. City of Albuquerque*, Civ. No. 09-0457 JB/WDS, 2012 WL 394392, at *22-*25 (D.N.M. Jan. 24, 2012)). Like the case at bar, *Robles* was a collective action arising under the FLSA. *See* 2011 WL 9717448 at *1. In contrast, *Lowery* dealt with a class-action settlement subject to the more stringent requirements of Rule 23. 2012 WL 394392 at *1. This Court will apply the factors discussed in *Robles*, which are best-suited to the present analysis.

In *Robles*, the court applied the following factors to determine whether an incentive award was warranted: (1) the actions the class representative has taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, (3) the amount of time and effort the class representative has expended in pursuing the litigation, and (4) the risks the class representative faced in pursuing the action. 2011 WL 9717448 at *12 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Further, the court noted that the Tenth Circuit has indicated that "incentive awards for class representatives are justified when a class representative is not

6

forthcoming and 'may' be justified when the class representative undertakes risk, provides additional effort, or contributes expertise to prosecuting a class action." *Id.* at *5 (citing *UFCW Local 880—Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235-36 (10th Cir. 2009) (unpublished)). Lastly, the court cited to a Ninth Circuit case for the proposition that "excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion." *Id.* at *8 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)); *see also id.* at *11 ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.") (quoting *Women's Comm. for Equal Emp't Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977)).

The *Robles* court ultimately disapproved of the requested incentive awards based in part on the four *Cook* factors outlined above, finding that Robles (1) "contributed less effort compared to that of other class representatives in cases in which an incentive award was approved," (2) did not expend "measurably, if any, more effort than if he had brought the lawsuit as an individual action" rather than as a collective action, (3) "faced only speculative and attenuated risk," and, finally, (4) "produced an award of less magnitude for the Collective Action Settlement Members than the class representative did for the class members in *Cook v. Niedert*[.]" *Id.* at *13. Moreover, the court found that Robles had failed to meet his "substantial burden" to show that an incentive award was justified for the additional reason that he "offers no argument or

7

evidence . . . that other class representative[s] were not forthcoming, and that an incentive award is justified for bringing a representative forward." *Id.* at *11, *12 (citing *UFCW Local 880*, 352 F. App'x at 235).

In the Amended Joint Motion to Approve Settlement, the parties did not fully address the above-outlined factors relevant to justifying incentive awards. *See generally doc. 84*. This omission weighed heavily against granting the motion because, as the presiding judge ruled in *Robles*, counsel's "failure to make any serious argument in favor of granting" an incentive award "carr[ies] significant weight" as a reason for refusing to grant such an award. *See id.* at *7-*8, *13-*14 (quoting *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th Cir. 2000)). The only relevant factor touched on in the Amended Joint Motion to Approve Settlement was the amount of time and effort named Plaintiffs Jimenez and Vogelsang-Wolf expended to pursue the litigation, noting that they "will receive a greater share of the payments reflecting their long-term participation in the litigation, including answering Interrogatories and attending depositions." *Id.* at 7. However, the presiding judge had earlier concluded in *Robles* that the "additional effort" factor should be interpreted narrowly to authorize an incentive award "when the class representatives' efforts are greater than the typical class representative's efforts and/or greater than the efforts a class representative would have incurred if his or her action were an individual action and not a class action." 2011 WL 9717448 at *13. Consequently, having answered Interrogatories and attended

8

depositions does not necessarily demonstrate that the named Plaintiffs engaged in the requisite "additional effort" under the applicable factor.

In short, the Amended Joint Motion to Approve Settlement did not adequately justify the incentive award payments proposed for the named plaintiffs. Nonetheless, as explained more fully below, Plaintiffs' instant Motion for Reconsideration compensates for the Motion to Approve Settlement's shortcomings, and persuades the Court that the agreed-upon bonus payments to named Plaintiffs Jimenez and Vogelsang-Wolf should be restored to the terms of the agreement.

First, Plaintiffs note in their Motion for Reconsideration that in this case, "class representatives either were not forthcoming or dropped out early in the litigation due to the pressures of the discovery process[.]" *Doc. 88* at 4. Indeed, named Plaintiffs Jimenez and Vogelsang-Wolf are the only Plaintiffs currently in the case; the seventeen potential plaintiffs set to receive notice of the settlement have not participated in this action during the nearly five years it has been pending before this Court and before the Court of Appeals. *See id.* Second, Plaintiffs assert that Jimenez and Vogelsang-Wolf "undertook risk in sticking with the litigation" because "both, experiencing or fearing retaliation, left Defendant's employ[.]" *Id.* The Tenth Circuit has explained:

> Incentive awards to class representatives are justified when necessary to induce individuals to become named representatives, but there is no need for such an award if at least one class member would have stepped forward without the lure of an incentive award. Moreover, a class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class.

9

*UFCW Local 880*, 352 F. App'x at 235–36 (internal citations, quotations, and alterations omitted). Plaintiffs' assertions that no other class representatives were forthcoming, and that the named Plaintiffs undertook risk,[5] thus carry significant weight in establishing the propriety of incentive awards here.

Third, Plaintiffs flesh out the "additional efforts" factor more thoroughly in the Motion for Reconsideration, explaining that the named Plaintiffs' efforts "exceeded the effort of typical class representatives by taking their case to the Tenth Circuit Court of Appeals. No other class members stepped up to keep this case viable during its five-year odyssey through the judicial system." Doc. 88 at 4. While, as noted above, a showing that a class representative expended greater efforts than the other class members may not be sufficient to satisfy the "additional efforts" factor, incentive awards are appropriate when their efforts are "greater than the typical class representative's efforts and/or greater than the efforts" they would have expended as plaintiffs in an individual action. *Robles*, 2011 WL 9717448 at *13. The named Plaintiffs here have met this standard. Appeals are atypical in cases decided at the summary judgment stage. *See, e.g.*, Theodore Eisenberg, *Appeal Rates and Outcomes in Tried and Nontried Cases: Further Exploration of Anti-Plaintiff Appellate Outcomes*, 1 J. Empirical

---

[5] As the Court explained in *Robles*, "speculative and attenuated risk" does not suffice to satisfy this factor. 2011 WL 9717448 at *13. There, Robles contended that he risked being "blacklisted" among employers in the same industry as his former employer, although he was not employed by the defendant at the time he brought the lawsuit and could point to no evidence to support that contention. *See id*. In contrast, here, one of the named Plaintiffs asserts that reactions to her involvement in the litigation caused her to leave Defendant's employ. Doc. 88 at 4.

Legal Stud. 659, 663 (2004) (explaining that there is only a 10.0 percent appeal rate in federal cases resolved without trial). Further, five years is much longer than the lifespan of a typical case.[6]

Fourth, and most importantly, the named Plaintiffs' willingness to pursue the partially successful appeal to the Tenth Circuit is the only reason there are any settlement funds to be disbursed here. Without the named Plaintiffs having won a partial reversal of this Court's grant of summary judgment to Defendants on all claims of both classes, all class members would be left with zero recovery. Their efforts have thus satisfied the second *Cook* factor, applied in *Robles*, of "the degree to which the class has benefitted" from the actions the named Plaintiffs have taken to protect the interests of the class. *See* 2011 WL 9717448 at *6 (quoting *Cook*, 142 F.3d at 1016).

Finally, the undersigned personally oversaw the settlement agreement on March 1, 2018, and can find no basis for concern that the bonus payments induced the named Plaintiffs to collude with Defendants, or otherwise to enter into an agreement that benefited them at the expense of the interests of the seventeen potential plaintiffs in the Dispatch Operator class. Therefore, although the named Plaintiffs will receive a greater recovery than the eligible potential plaintiffs, that disparity in recovery does not reflect collusion between named Plaintiffs and Defendants. Rather, it is justified by the vastly

---

[6] *See* United States District Courts—National Judicial Caseload Profile, http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2018.pdf (showing a median time of 8.6 months from filing to disposition of civil cases which, like this case, were brought during the 12-month period ending March 31, 2014).

11

greater time and effort Plaintiffs expended in pursuing this litigation compared to a typical class representative or to a plaintiff in an individual action, as well as their willingness to stick with the case when no other named Plaintiffs were so willing.

III. CONCLUSION

Overall, the Court agrees that Plaintiffs' counsel have made a "serious argument" for incentive awards in their Motion for Reconsideration. *Doc. 88* at 6-7 (quoting *Montgomery*, 231 F.3d at 399). Plaintiffs have shown that the incentive awards that the parties negotiated for the named Plaintiffs are appropriate in light of the applicable factors. Accordingly, the Motion for Reconsideration (*doc. 88*) is **GRANTED**.

In order to effectuate this grant of reconsideration, the parties are hereby **ORDERED** to submit, within seven (7) days of the entry of this Order, a Stipulated Judgment (along with accompanying exhibits) disbursing the settlement proceeds in accordance with the agreement outlined in the Amended Joint Motion to Approve Settlement and the Motion for Reconsideration. The documents must account for any deadlines mooted by the passage of time.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**